SCHWEIKER, SECRETARY OF HEALTH AND HUMAN
SERVICES, ET AL. *v.* GRAY PANTHERS

No. 80–756.   Argued April 29, 1981—Decided June 25, 1981

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, BLACKMUN, and REHNQUIST, JJ., joined. STEVENS, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 50.

*George W. Jones* argued the cause *pro hac vice* for petitioners. With him on the briefs were *Solicitor General McCree, Deputy Solicitor General Geller,* and *Robert P. Jaye.*

*Gill Deford* argued the cause for respondent. With him on the brief were *Neal S. Dudovitz* and *Toby S. Edelman.*\*

JUSTICE POWELL delivered the opinion of the Court.

The Medicaid program provides federal funds to States that pay for medical treatment for the poor. An individual's entitlement to Medicaid benefits depends on the financial resources "available" to him. Some States determine eligibility by assuming—"deeming"—that a portion of the spouse's income is "available" to the applicant. "Deeming" thus has the effect of reducing both the number of eligible individuals and the amount of assistance paid to those who qualify. The question in this case is whether the federal regulations that permit States to "deem" income in this manner are arbitrary, capricious, or otherwise unlawful.

I

The Medicaid program, established in 1965 as Title XIX of the Social Security Act (Act), 79 Stat. 343, as amended, 42 U. S. C. § 1396 *et seq.* (1976 ed. and Supp. III), "provid[es] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris* v. *McRae,* 448 U. S. 297, 301 (1980). Each participating State develops a plan containing "reasonable standards . . . for determining eligibility for and the extent of medical assistance." 42 U. S. C. § 1396a (a)(17). An individual is entitled to Medicaid if he fulfills the criteria established by

---

\**Linley E. Pearson,* Attorney General, and *William E. Daily* and *Janis L. Summers,* Deputy Attorneys General, filed a brief for the State of Indiana as *amicus curiae* urging reversal.

*Peter L. Cassady, William E. Marple,* and *Thomas W. Jordan, Jr.,* filed a brief for John H. Foard et al. as *amici curiae* urging affirmance.

the State in which he lives. State Medicaid plans must comply with requirements imposed both by the Act itself and by the Secretary of Health and Human Services (Secretary). See § 1396a (1976 ed. and Supp. III).

## A

As originally enacted, Medicaid required participating States to provide medical assistance to "categorically needy" individuals who received cash payments under one of four welfare programs established elsewhere in the Act. See § 1396a (a)(10) (1970 ed.). The categorically needy were persons whom Congress considered especially deserving of public assistance because of family circumstances, age, or disability.[1] States, if they wished, were permitted to offer assistance also to the "medically needy"—persons lacking the ability to pay for medical expenses, but with incomes too large to qualify for categorical assistance. In either case, the Act required the States to base assessments of financial need only on "such income and resources as are, as determined in accordance with standards prescribed by the Secretary, *available* to the applicant or recipient." § 1396a (a)(17)(B) (emphasis added). Specifically, eligibility decisions could "not take into account the financial responsibility of any individual for any applicant or recipient of assistance . . . unless such applicant or recipient is such individual's spouse" or minor, blind, or disabled child. § 1396a (a)(17)(D).

Believing it reasonable to expect an applicant's spouse to help pay medical expenses, some States adopted plans that considered the spouse's income in determining Medicaid eligibility and benefits.[2] These States calculated an amount

---

[1] The categorically needy were those entitled to assistance under four programs: Old Age Assistance, 42 U. S. C. § 301 *et seq.* (1970 ed.); Aid to Families with Dependent Children, § 601 *et seq.;* Aid to the Blind, § 1201 *et seq.;* and Aid to the Permanently and Totally Disabled, § 1351 *et seq.* See also 42 U. S. C. §§ 1381–1385 (1970 ed.).

[2] The Secretary approved these state plans.

considered necessary to pay the basic living expenses of the spouse and "deemed" any of the spouse's remaining income to be "available" to the applicant, even where the applicant was institutionalized and thus no longer living with the spouse.

## B

In 1972, Congress replaced three of the four categorical assistance programs with a new program called Supplemental Security Income for the Aged, Blind, and Disabled (SSI), 42 U. S. C. § 1381 *et seq.*, Pub. L. 92–603, 86 Stat. 1465.[3] Under SSI, the Federal Government displaced the States by assuming responsibility for both funding payments and setting standards of need. In some States the number of individuals eligible for SSI assistance was significantly larger than the number eligible under the earlier, state-run categorical need programs.

The expansion of general welfare accomplished by SSI portended increased Medicaid obligations for some States because Congress retained the requirement that all recipients of categorical welfare assistance—now SSI—were entitled to Medicaid. Congress feared that these States would withdraw from the cooperative Medicaid program rather than expand their Medicaid coverage in a manner commensurate with the expansion of categorical assistance. "[I]n order not to impose a substantial fiscal burden on these States" or discourage them from participating, see S. Rep. No. 93–553, p. 56 (1973), Congress offered what has become known as the "§ 209 (b) option." [4] Under it, States could elect to provide Medicaid as-

---

[3] Thus, of the four state-administered categorical programs, only Aid to Families with Dependent Children survived the enactment of SSI.

[4] Section 209 (b) of the 1972 amendments, as amended, and as set forth in 42 U. S. C. § 1396a (f), provides, in pertinent part:

"Notwithstanding any other provision of this subchapter . . . no State not eligible to participate in the State plan program established under subchapter XVI of this chapter shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of subchapter XVI of this chapter) for any month unless such State would be

sistance only to those individuals who would have been eligible under the state Medicaid plan in effect on January 1, 1972.[5] States thus became either "SSI States" or "§ 209 (b) States" depending on the coverage that they offered.[6]

The Secretary promulgated regulations governing the administration of Medicaid benefits in both SSI States and § 209 (b) States. The regulations described the circumstances in which the income of one spouse may be "deemed" available to the other. In SSI States, "deeming" is conducted in the following manner: When the applicant and his spouse live in the same household, the spouse's income and resources always are considered in determining eligibility, "whether or not they are actually contributed." 42 CFR § 435.723 (b) (1980). When the applicant and spouse cease to share the

---

(or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month, except that for this purpose any such individual shall be deemed eligible for medical assistance under such State plan if (in addition to meeting such other requirements as are or may be imposed under the State plan) the income of any such individual as determined in accordance with section 1396b (f) of this title (after deducting any supplemental security income payment and State supplementary payment made with respect to such individual, and incurred expenses for medical care as recognized under State law) is not in excess of the standard for medical assistance established under the State plan as in effect on January 1, 1972."

[5] States exercising the § 209 (b) option were required to adopt a "spend-down" provision. See ibid. Under it, an individual otherwise eligible for SSI but whose income exceeded the state standard could become eligible for Medicaid when that part of his income in excess of the standard was consumed by expenses for medical care. Ibid.

[6] Fifteen States now use the § 209 (b) option. They are: Connecticut, Hawaii, Illinois, Indiana, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, North Carolina, North Dakota, Ohio, Oklahoma, Utah, and Virginia. (Guam, Puerto Rico, and the Virgin Islands are similarly situated with respect to Medicaid coverage because the SSI program never took effect there.) The Secretary permits States to change from "SSI-status" to "§ 209 (b)-status" at any time. New York has filed to become a § 209 (b) State. Pet. for Cert. 10, n. 11.

same household, the spouse's income is disregarded the next month, § 435.723 (d), unless both are eligible for assistance. In the latter case, the income of both is considered for six months after their separation. § 435.723 (c).

Greater "deeming" is authorized in § 209 (b) States. The regulations require such States to "deem" income at least to the extent required in SSI States. § 435.734. And, if they choose, § 209 (b) States may "deem" to the full extent that they did before 1972. *Ibid.*[7]

## II

Respondent, an organization dedicated to helping the Nation's elderly,[8] filed this suit in the District Court for the District of Columbia attacking some of the Secretary's regulations applicable in § 209 (b) States.[9] Respondent argued that "deeming" impermissibly employs an "arbitrary formula" to impute a spouse's income to an institutionalized Medicaid applicant. According to respondent, "deeming" is inconsistent with § 1902 (a)(17) of the Act, 42 U. S. C.

---

[7] The regulation provides, in pertinent part, that "the agency must consider the income and resources of spouses and parents as available to the individual in the manner specified [for SSI States] or in a more extensive manner, but not more extensive than the requirements in effect under the Medicaid plan on January 1, 1972."

[8] The District Court correctly found that respondent had standing to sue because respondent alleged and proved that some of its members are persons adversely affected by the Secretary's regulations. Compare *Warth* v. *Seldin,* 422 U. S. 490, 511 (1975), with *Sierra Club* v. *Morton,* 405 U. S. 727, 735 (1972). Because this is a suit against the Secretary, the District Court had subject-matter jurisdiction under 28 U. S. C. § 1331 (a) without regard to the amount in controversy. Cf. *Chapman* v. *Houston Welfare Rights Organization,* 441 U. S. 600 (1979); *Weinberger* v. *Salfi,* 422 U. S. 749 (1975).

[9] The principal regulation at issue was 42 CFR § 435.734 (1980), quoted in n. 7; *supra.* Also challenged were "deeming" regulations applicable in Puerto Rico, Guam, and the Virgin Islands. 42 CFR §§ 436.602, 436.711, 436.821 (1980).

§ 1396a (a) (17), which provides that only income "available" to the applicant may be considered in establishing entitlement to and the amount of Medicaid benefits.[10]  In respondent's view, before a State may take into account the income of a spouse in calculating the benefits of any institutionalized applicant, the State must make a factual determination that the spouse's income *actually is contributed* to that applicant.

The District Court agreed with respondent and declared the regulations invalid. *Gray Panthers v. Secretary, Dept. of HEW*, 461 F. Supp. 319 (1978).[11]  The Court of Appeals for the District of Columbia Circuit affirmed, but under a different theory.  *Gray Panthers v. Administrator, Health Care Financing Administration*, 203 U. S. App. D. C. 146, 629 F. 2d 180 (1980).  Citing this Court's decision in *Citizens to Preserve Overton Park v. Volpe*, 401 U. S. 402 (1971), the

---

[10] Subsection (17) provides that a state plan for medical assistance must—

"include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient . . . , (C) provide for reasonable evaluation of any such income or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 or (with respect to States eligible to participate in the State program established under subchapter XVI of this chapter), is blind or permanently and totally disabled, or is blind or disabled as defined in section 1382c of this title (with respect to States which are not eligible to participate in such program); and provide for flexibility in the application of such standards with respect to income by taking into account, except to the extent prescribed by the Secretary, the costs (whether in the form of insurance premiums or otherwise) incurred for medical care or for any other type of remedial care recognized under State law."

[11] The District Court thus did not need to reach respondent's alternative arguments that the regulations deprived its members of due process and equal protection.

court held that the regulations were invalid because the Secretary, in authorizing "deeming" of income between noncohabiting spouses, had failed to "tak[e] . . . into account" two "relevant factors." 203 U. S. App. D. C., at 149–150, 629 F. 2d, at 183–184. First, where spouses are separated they maintain two households rather than one. For those already put to this additional expense, it is unfair to continue to treat the couple as a "single economic unit" jointly responsible for the medical expenses of each. *Id.,* at 151, 629 F. 2d, at 185. Second, the requirement of support carries with it the potential to interject "disruptive forces" into people's lives. *Id.,* at 152, 629 F. 2d, at 186. The noninstitutionalized spouse is

> "faced with the 'choice' of reducing his or her standard of living to a point apparently set near the poverty line, or being responsible for the eviction of his or her spouse from the institution." *Ibid.*

One aspect of this "disruption," according to the court, was the fact that the "deeming" requirement creates an incentive for couples to divorce. *Id.,* at 152, n. 14, 629 F. 2d, at 186, n. 14. Because the court believed that the Secretary had not adequately considered these effects of "deeming," it affirmed the District Court's order invalidating the regulations and remanded to the Secretary for reconsideration.[12]

---

[12] The Secretary has promulgated provisional regulations allowing § 209 (b) jurisdictions either to ignore the spouse's income or to consider it to the extent that it would be considered in an SSI State. See 45 Fed. Reg. 82254 (1980). At oral argument, counsel for the Secretary said that the new regulations probably would be rescinded if the Court of Appeals' decision were reversed. Tr. of Oral Arg. 4–7. The dissenting opinion, which would affirm the reasoning of the Court of Appeals, attaches significance to the fact that the preamble to the provisional regulations incorporates the sociological analysis of the Court of Appeals' opinion. *Post,* at 53–56. But this reflects no independent judgment of the Secretary, and is entitled to no weight. In issuing the provisional regulations, the Secretary simply was adhering to the lower court's reasoning and mandate. 45 Fed. Reg., at 82255 (the new regulations "are based on the Court of Appeals' decision in *Gray Panthers*").

We granted certiorari *sub nom. Harris* v. *Gray Panthers,* 449 U. S. 1123 (1981), to resolve disagreement among the Courts of Appeals over the validity of "deeming" income in determining Medicaid benefits.[13]

## III

Congress explicitly delegated to the Secretary broad authority to promulgate regulations defining eligibility requirements for Medicaid. We find that the regulations at issue in this case are consistent with the statutory scheme and also are reasonable exercises of the delegated power. The Court of Appeals therefore was not justified in invalidating them, and we reverse.

### A

The Social Security Act is among the most intricate ever drafted by Congress. Its Byzantine construction, as Judge Friendly has observed, makes the Act "almost unintelligible to the uninitiated." *Friedman* v. *Berger,* 547 F. 2d 724, 727, n. 7 (CA2 1976), cert. denied, 430 U. S. 984 (1977).[14] Perhaps appreciating the complexity of what it had wrought, Congress conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the Act. *Batterton* v. *Francis,* 432 U. S. 416, 425 (1977). Of special relevance in the present case is the delegation of authority in § 1902 (a)(17)(B) of the Act, 42 U. S. C. § 1396a (a)(17)(B), one of the provisions setting requirements for state Medicaid plans. Participating States must grant benefits to eligible persons "taking into account only such income

---

[13] See *Herweg* v. *Ray,* 619 F. 2d 1265 (CA8 1980) (en banc), cert. pending, No. 80–60; *Brown* v. *Stanton,* 617 F. 2d 1224 (CA7 1980), cert. pending, No. 79–1690; *Norman* v. *St. Clair,* 610 F. 2d 1228 (CA5 1980), cert. pending *sub nom. Schweiker* v. *Norman,* No. 80–498. Although we quote passages from these decisions in this opinion, we do not necessarily endorse other language in them.

[14] The District Court in the same case described the Medicaid statute as "an aggravated assault on the English language, resistant to attempts to understand it." 409 F. Supp. 1225, 1226 (SDNY 1976).

and resources as are, *as determined in accordance with standards prescribed by the Secretary,* available to the applicant" (emphasis added).

In view of this explicit delegation of substantive authority, the Secretary's definition of the term "available" is "entitled to more than mere deference or weight," *Batterton* v. *Francis,* 432 U. S., at 426. Rather, the Secretary's definition is entitled to "legislative effect" because, "[i]n a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term." *Id.,* at 425. Although we do not abdicate review in these circumstances, our task is the limited one of ensuring that the Secretary did not "excee[d] his statutory authority" and that the regulation is not arbitrary or capricious. *Id.,* at 426.

## B

We do not think that the regulations at issue, insofar as they authorize some "deeming" of income between spouses, exceed the authority conferred on the Secretary by Congress. Section 1902 (a)(17)(D) of the Act, 42 U. S. C. § 1396a (a) (17)(D), enacted in 1965, provides that, in calculating benefits, state Medicaid plans must not

"take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan *unless such applicant or recipient is such individual's spouse* or such individual's child who is under age 21 or [in certain circumstances] is blind or disabled . . . ." (Emphasis added.)

It thus is apparent that, from the beginning of the Medicaid program, Congress authorized States to presume spousal support. *Norman* v. *St. Clair,* 610 F. 2d 1228, 1236 (CA5 1980), cert. pending *sub nom. Schweiker* v. *Norman,* No. 80–498.

The legislative history of this provision is fully consistent with its language. The Senate and House Reports accompanying the 1965 amendments used virtually identical lan-

guage in endorsing the concept of "deeming" between spouses. The Senate Report states in pertinent part:

> "The committee believes it is proper to expect spouses to support each other and parents to be held accountable for the support of their minor children . . . . Such requirements for support may reasonably include the payment by such relative, if able, for medical care. Beyond such degree of relationship, however, requirements imposed are often destructive and harmful to the relationships among members of the family group. Thus, States may not include in their plans provisions for requiring contributions from relatives *other than a spouse or the parent of a minor child* . . . ." S. Rep. No. 404, 89th Cong., 1st Sess., 78 (1965) (emphasis added).

Accord, H. R. Rep. No. 213, 89th Cong., 1st Sess., 68 (1965). Senator Long, who headed the Senate's conference delegation, summarized the effect of subsection (17) as follows:

> "No income can be imputed to an individual unless actually available; and the financial responsibility of an individual for an applicant may be taken into account only if the applicant is the individual's spouse . . . ." 111 Cong. Rec. 18350 (1965).

This confirms our view that "Congress intended that income deemed from a spouse" could "be a part of the 'available' income which the state may consider in determining eligibility." *Norman* v. *St. Clair, supra,* at 1237.

If "deeming" were not permissible, subsection (17)(D) would be superfluous. Payments *actually received* by a Medicaid applicant—whether from a spouse or a more distant relative—are taken into account automatically. Thus, if there is to be content to subsection (17)(D)'s distinction between the responsibility of a spouse and that of a more distant relative, the subsection must envision that States can "deem" the income of the former but not the latter. See 610 F. 2d., at 1237.

Respondent is unable to offer a persuasive alternative explanation of subsection (17)(D). It suggests that Congress included the subsection simply to permit States to enforce their "relative responsibility laws" against a noncontributing spouse. In other words, respondent believes that Congress intended to prohibit States from automatically taking into account a spouse's income in computing benefits, but simultaneously to authorize States to sue any spouse who failed to contribute income to a Medicaid applicant. We find this argument unpersuasive. It is not

> "an answer to say that the state can take action against the spouse to recover that which the spouse was legally obligated to pay. [It is] unrealistic to think that the state will engage in a multiplicity of continuing individual lawsuits to recover the money that it should not have had to pay out in the first place. [Because States cannot practically do so, there would be] an open invitation for the spouse to decide that he or she does not wish to make the excess payment." *Brown* v. *Stanton,* 617 F. 2d 1224, 1234 (CA7 1980) (Pell, J., dissenting in part and concurring in part), cert. pending, No. 79–1690.[15]

Nothing in the 1972 amendments suggests that Congress intended to terminate the practice of "deeming" already contained in many state plans; rather, Congress appears to have ratified this practice implicitly. As noted above, the 1972 SSI program consolidated and set national standards for three of the four categorical grant programs. Traditionally, all recipients of categorical aid were entitled to Medicaid. Congress, however, did not want to force additional Medicaid obligations on States. It therefore enacted § 209

---

[15] Counsel for respondent acknowledged at oral argument that individual suits against spouses often would be useless, even if the State made the effort to bring them, because the court might not order the spouse to pay out of funds needed to maintain a reasonable standard of living. Tr. of Oral Arg. 37–39.

(b) to ensure that States that do not wish to do so would not have to enlarge Medicaid eligibility to SSI levels. States using the § 209 (b) option thus were told they could retain virtually all [16] of the Medicaid eligibility limitations—including "deeming"—that were allowed under the original Act.

## C

Respondent nevertheless insists that the Secretary's regulation is inconsistent with provisions of the statute and also contrary to statements in the legislative history. The Act requires Medicaid determinations to be made only on the basis of the income "*available* to the applicant." 42 U. S. C. § 1396a (a)(17)(B) (emphasis added). According to respondent, the use of that term demonstrates that Medicaid entitlements must be determined on the basis of income "actually in the hands . . . of the institutionalized spouse," Tr. of Oral Arg. 30, not imputed on the basis of an "arbitrary formula." Respondent acknowledges the duty of spousal support as a general matter, *id.*, at 26–27, but argues that the Act nevertheless requires an individualized determination of availability in each case.

We take a different view. It is clear beyond doubt that Congress was wary of imputing the income of others to a Medicaid applicant.[17] Yet, as we noted above, Congress treated spouses differently from most other relatives by explicitly authorizing state plans to "take into account the financial responsibility" of the spouse. 42 U. S. C. § 1396a (a)(17) (D). Congress thus demonstrated that "deeming" is not

---

[16] States exercising the § 209 (b) option were obliged only to amend their Medicaid plans to include a "spend-down" provision. See n. 5, *supra.*

[17] See, *e. g.,* S. Rep. No. 404, 89th Cong., 1st Sess., 78 (1965) (States may "not assume the availability of income which may not, in fact, be available"); 111 Cong. Rec. 15804 (1965) (remarks of Sen. Ribicoff) ("only income and resources actually available to an applicant may be considered in determining need"); *id.,* at 7216 (remarks of Rep. Mills) ("[n]o income can be imputed to an individual unless actually available").

antithetical to the general statutory requirement that Medicaid eligibility be based solely on resources "available" to the applicant. "Available" resources are different from those *in hand.* We think that the requirement of availability refers to resources left to a *couple* after the spouse has deducted a sum on which to live. It does not, as respondent argues, permit the State only to consider the resources actually paid by the spouse to the applicant. See *Herweg* v. *Ray,* 619 F. 2d 1265, 1272 (CA8 1980) (en banc) (opinion of Ross, J.) (aff'g by an equally divided court 481 F. Supp. 914 (SD Iowa 1978)), cert. pending, No. 80–60.

Sound principles of administration confirm our view that Congress authorized "deeming" of income between spouses. The administration of public assistance based on the use of a formula is not inherently arbitrary. Cf. *Weinberger* v. *Salfi,* 422 U. S. 749, 781, 782, 784 (1975). There are limited resources to spend on welfare. To require individual determinations of need would mandate costly factfinding procedures that would dissipate resources that could have been spent on the needy. *Id.,* at 784. Sometimes, of course, Congress has required individualized findings of fact.[18] In this case, however, the Act and legislative history make clear that Congress approved some "deeming" of income between individuals and their spouses, at least where States had enacted rules to this effect before 1972.

## IV

We are not without sympathy for those with minimal resources for medical care.[19] But our "sympathy is an insuffi-

---

[18] *E. g., Van Lare* v. *Hurley,* 421 U. S. 338 (1975) (Aid to Families with Dependent Children (AFDC) calculations under 42 U. S. C. § 606 (a)); *Shea* v. *Vialpando,* 416 U. S. 251 (1974) (AFDC calculations under 42 U. S. C. § 602 (a)(7)). See also *Lewis* v. *Martin,* 397 U. S. 552 (1970); *King* v. *Smith,* 392 U. S. 309 (1968).

[19] A brief *amicus curiae* paints a distressing picture of individuals forced to choose between abandoning an institutionalized spouse and living in

cient basis for approving a recovery" based on a theory inconsistent with law. *Potomac Electric Power Co.* v. *Director, OWCP,* 449 U. S. 268, 284 (1980).[20] This suit is a direct attack on regulations authorizing the concept of "deeming" in the abstract. Hardships resulting from provisions in particular state plans that set aside inadequate sums for the contributing spouse, see n. 19, *supra,* are not at issue here.[21]

We hold that the Secretary properly exercised the authority delegated by Congress in promulgating regulations permitting "deeming" of income between spouses in § 209 (b)

poverty. Brief for John H. Foard et al. as *Amici Curiae* 4–11. Yet, as the dissenting judge below pointed out, the principal "villain" in this case is not "deeming" *per se,* but inflation. 203 U. S. App. D. C., at 155, 629 F. 2d, at 189 (MacKinnon, J., dissenting). Many States have not recently reviewed the amount that the contributing spouse may set aside for his own living expenses and thereby exempt from "deeming." As the Secretary concedes, that amount even when first set was "near subsistence level." Brief for Petitioners 4. Over time, with inflation, that dollar amount in some States may have become inadequate to support the noninstitutionalized spouse.

[20] We note, in any event, that respondent's position would not eliminate difficult choices for the contributing spouse. This lawsuit seeks only to enjoin the "deeming" of income to an institutionalized spouse. *Supra,* at 40–41; App. 17a. Respondent thus concedes the legality of "deeming" where spouses cohabit. To adopt respondent's construction of the statute would create an incentive to shunt ailing spouses into nursing homes to circumvent the "deeming" that otherwise would occur.

[21] The dissenting opinion suggests that the *federal regulations* authorizing "deeming" are invalid because the provisions of some *state plans* "allo[w] a State to deem more income than [can] realistically be considered 'available.'" *Post,* at 56. We think the dissent addresses a problem not presently before the Court. This case presents the question whether any "deeming" is consistent with the "availability" requirement of subsection (17) (B). We hold that it is. We do not, however, decide whether state plans that set aside inadequate sums for the contributing spouse are consistent with other provisions of the statute, such as the requirement that States "reasonabl[y] evaluat[e] . . . income or resources." 42 U. S. C. § 1396a (a) (17) (C). In sum, whatever deficiencies may exist in specific state plans are not at issue in this case.

States. Cf. *Batterton* v. *Francis*, 432 U. S. 416 (1977).[22]
Accordingly, we reverse the decision under review and remand
for proceedings consistent with this opinion.[23]

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BRENNAN and
JUSTICE MARSHALL join, dissenting.

The scope of the issue presented in this difficult case is
confined to the situation in which a married applicant for
Medicaid benefits is institutionalized. I believe that issue
can be best understood by focusing our attention on an in-
stitutionalized applicant who is totally dependent for finan-
cial support on a spouse who is employed and who continues
to live in what had been their joint home. Arguably the rele-
vant statutory language [1] might authorize the eligibility deter-

---

[22] The Court of Appeals thus erred in its reliance on *Citizens to Preserve
Overton Park* v. *Volpe,* 401 U. S. 402 (1971). The court believed that the
Secretary had not "taken the relevant factors into account." 203 U. S.
App. D. C., at 150, 629 F. 2d, at 184. The preceding discussion demon-
strates, however, that Congress itself already had considered the "relevant
factors" in authorizing "deeming" between spouses. *Supra,* at 44–48. In
these circumstances, the Secretary need not do more. Cf. *Vermont
Yankee Nuclear Power Corp.* v. *Natural Resources Defense Council, Inc.,*
435 U. S. 519, 548–549 (1978).

[23] By holding for respondent on statutory grounds, the lower courts
pretermitted respondent's constitutional arguments. See n. 11, *supra.*
These arguments are, of course, open to be litigated on remand. We
express no view as to their merit.

[1] Section 1902 (a) (17) of the Social Security Act, 79 Stat. 346, as
amended, and as set forth in 42 U. S. C. § 1396a (a) (17), provides:

"(a) A State plan for medical assistance must—

⋅ ⋅ ⋅ ⋅ ⋅

"(17) include reasonable standards (which shall be comparable for all
groups and may, in accordance with standards prescribed by the Secre-
tary, differ with respect to income levels, but only in the case of applicants
or recipients of assistance under the plan who are not receiving aid or
assistance under any plan of the State approved under subchapter I, X,

mination to be made in three ways: (1) none of the employed spouse's income should be deemed available to the institutionalized spouse unless it is actually contributed; (2) all of that income should be deemed available; (3) some, but not all, may be counted in determining the eligibility of the institutionalized spouse.

Respondent persuaded the District Court that the first reading was required by the word "available" in subpart (B) of § 1902 (a)(17), and by the legislative history's emphasis on preventing the States from assuming the "availability of

XIV, or XVI, or part A of subchapter IV of this chapter, and with respect to whom supplemental security income benefits are not being paid under subchapter XVI of this chapter, based on the variations between shelter costs in urban areas and in rural areas) for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and (in the case of any applicant or recipient who would, except for income and resources, be eligible for aid or assistance in the form of money payments under any plan of the State approved under subchapter I, X, XIV, or XVI or part A of subchapter IV, or to have paid with respect to him supplemental security income benefits under subchapter XVI of this chapter) as would not be disregarded (or set aside for future needs) in determining his eligibility for such aid, assistance or benefits, (C) provide for reasonable evaluation of any such income or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 or (with respect to States eligible to participate in the State program established under subchapter XVI of this chapter), is blind or permanently and totally disabled, or is blind or disabled as defined in section 1382c of this title (with respect to States which are not eligible to participate in such program); and provide for flexibility in the application of such standards with respect to income by taking into account, except to the extent prescribed by the Secretary, the costs (whether in the form of insurance premiums or otherwise) incurred for medical care or for any other type of remedial care recognized under State law."

income which may not, in fact, be available." [2]  For the reasons stated by the Court, I agree that this is not a correct reading of the statute. [3]  The Court of Appeals decision, however, cannot be reversed on that basis.  That court did not hold that deeming was never permissible; rather, it invalidated regulations which permitted virtually unlimited deeming.  I am persuaded that the Court of Appeals was correct in its holding that the statute does place significant limits on the amount of income that may be deemed available to the institutionalized spouse.

The Court of Appeals set aside the Secretary's regulations because in promulgating those regulations the Secretary had failed to consider all relevant factors as required by *Citizens to Preserve Overton Park* v. *Volpe,* 401 U. S. 402.  Relying on the same legislative history as did the District Court, the Court of Appeals reasoned that the statutory scheme contemplated that cohabiting spouses would support each other but that Congress intended a flexible approach to apply in situations in which the basic assumption of cohabitation could not be made. [4]  The court thus held that the Secretary should

---

[2] "Another provision is included that requires States to take into account only such income and resources as . . . are *actually available to the applicant or recipient* . . . .  Income and resources taken into account, furthermore, must be reasonably evaluated by the States.  *These provisions are designed so that the States will not assume the availability of income which may not, in fact, be available . . . .*" S. Rep. No. 404, 89th Cong., 1st Sess., 78 (1965) (emphasis supplied); see H. R. Rep. No. 213, 89th Cong., 1st Sess., 67 (1965) (hereinafter 1965 House Report).

[3] See also *Norman* v. *St. Clair,* 610 F. 2d 1228, 1237–1238 (CA5 1980), cert. pending *sub nom. Schweiker* v. *Norman,* No. 80–498; *Brown* v. *Stanton,* 617 F. 2d 1224, 1233–1234 (CA7 1980) (Pell, J., dissenting in part and concurring in part), cert. pending, No. 79–1690.

[4] The court noted that the 1965 House Report indicated that deeming should not be employed unless the income is "in fact, available":

"These provisions are designed so that the States will not assume the availability of income which may not, in fact, be available or overevaluate income and resources which are available.  Examples of income assumed

have taken into account the impact of institutionalization of one spouse on what previously constituted a single economic unit[5] and the potential disruption of the family caused by deeming.[6]

In revising her regulations after the Court of Appeals' decision, then Secretary Harris specifically considered the fac-

include support orders from absent fathers, which have not been paid or contributions from relatives which are not in reality received by the needy individual." 1965 House Report, at 67.

Thus the legislative history recognizes that if the basic assumption underlying a support requirement is not correct, the income of the spouse or parent is not "actually available." Just as the premise that fathers should support their children should not apply when the father is absent, the premise that spouses pool income and resources to support each other should not apply when one spouse is institutionalized.

[5] The court stated:

"[T]he general rule of mutual support proceeds from the assumption that the spouses maintain a common household, 'sharing' income and expenses, see 42 Fed. Reg. 2685, 2686 (1977), and constituting a single economic unit. But where institutionalization has caused one spouse to be absent from the home, two households, not one, in effect must be maintained. Expenses can no longer fairly be characterized as jointly incurred, and 'deeming' no longer accurately reflects the economic norm. An important condition that makes 'deeming' ordinarily reasonable between spouses is thus not met." *Gray Panthers* v. *Administrator, Health Care Financing Administration*, 203 U. S. App. D. C. 146, 151, 629 F. 2d 180, 185.

[6] "The legislative history of Section 1396 (a)(17) recognizes that, especially in the context of the family structure, great care must be exercised to ensure that governmental regulation does not needlessly disrupt people's lives. In contrast with the ordinary situation of cohabiting spouses, institutionalized individuals and their husbands or wives are particularly vulnerable to the disruptive forces than can be exerted by governmental regulations. In most cases the individual's continued institutionalization depends upon his or her spouse's ability (or willingness) to pay the 'deemed' amount. The spouse is thus faced with the 'choice' of reducing his or her standard of living to a point apparently set near the poverty line, or being responsible for the eviction of his or her spouse from the institution. The institutionalized individual is often literally helpless to temper the harshness of this dilemma." *Id.*, at 152, 629 F. 2d, at 186 (footnotes omitted).

tors discussed by the Court of Appeals.[7]   Although the Secretary was required by the Court of Appeals mandate to reconsider the regulation in light of the factors discussed by the court, the court's mandate did not specify the contents of the new regulations.[8]   Nevertheless, the Secretary concluded that deeming in § 209 (b) States should be limited in both "duration and amount."[9]   She cogently explained her conclusion that "deeming has several adverse impacts on beneficiaries":

> "The institutionalized spouse may lose medicaid eligibility if the deemed amount is large enough to bring his or her income level over the State's standards.   If the deemed amount is not actually contributed but the State's payments to the facility nevertheless are reduced by that amount, the individual may be asked to leave the

---

[7] The Secretary also considered "additional factors we believe important":

"(1) The extent to which deeming is consistent with the best interests of program beneficiaries;

"(2) The Federal-State nature of the Medicaid program;

"(3) The extent to which the regulations would be simple to administer; and

"(4) The fiscal effects of the regulations on Medicaid programs budgets." 45 Fed. Reg. 82254, 82256 (1980).

[8] In response to a comment arguing that the Court of Appeals decision prohibited any deeming, the Secretary responded:

"We disagree with the commenters' interpretation of the Court of Appeals' decision.   The only issue before the Court was whether deeming is appropriate in section 1902 (f) States for spouses separated by institutionalization.   Because the Court of Appeals ordered that we consider the factors relevant to deeming in its limited context, it authorized us to approve deeming if our consideration of the factors led to this result. We have concluded, through balancing these factors that limited deeming is appropriate in this context." *Id.*, at 82258.

[9] The new regulations apply the deeming rule currently in effect for SSI States, which permits deeming only until the month following institutionalization when only the institutionalized spouse is otherwise eligible for Medicaid and for six months when both spouses are eligible.   See *ibid.*; 42 U. S. C. §§ 1381a, 1382 (a), 1382c (b), 1382c (f).

institution. With respect to the spouse in the community, the use of deeming may also be unfair. This occurs principally because, in section 1902 (f) States, the amounts that are protected for the noninstitutionalized spouse's maintenance may be set at 1972 levels. Those levels may be insufficient in light of the current cost of living. This may force the noninstitutionalized spouse either to refuse to pay the 'deemed' amount (possibly resulting in the institutionalized spouse being required to leave the facility), or to try to live at levels that are inadequate for subsistence.

"Moreover, when income is 'deemed,' the spouse has less of an incentive actually to contribute the amount than if relative responsibility laws are used, because deeming has an adverse effect on the institutionalized individual, whereas relative responsibility laws affect the spouse in the community by requiring him or her to make support payments. These potentially severe impacts lead us to conclude that deeming should be limited in both duration and amount." [10]

In my opinion, the Court of Appeals was correct in construing the statutory mandate that "only such income and

[10] 45 Fed. Reg., at 82256. The Secretary further stated:

"We also believe that, although there is a general expectation that spouses should support one another, their ability to do so is substantially undermined when one spouse is institutionalized. The expectation for support is based, in part, on the assumption that spouses maintain a common household, will share income and expenses, and therefore constitute a single economic unit. However, that assumption is undercut when a spouse is institutionalized. In deciding what constituted a period of institutionalization long enough to overcome the assumption that the spouses are a household unit, we looked at the rules used in the SSI program and whether those rules were suitable for Medicaid.

"We believe that, in cases where only one spouse is eligible, the couple should no longer be viewed as maintaining a common household beginning with the month following the month of institutionalization." *Id.*, at 82256–82257.

resources as are . . . available to the applicant" may be taken into account in determining eligibility to require consideration of the impact of institutionalization of one spouse on what was previously a single economic unit. The Secretary's consideration of that factor led her to conclude that deeming "should be limited in both duration and amount." The regulations that had been in effect prior to the Court of Appeals decision permitted a State to deem, for an unlimited period, the wage earner's entire income except for an amount that might have been sufficient to supply basic living requirements in 1972. Because the wage earner and the institutionalized spouse were no longer living together and thereby sharing expenses, and because inflation in the intervening years increased the amount of those expenses, the regulations allowed a State to deem more income than could realistically be considered "available." [11] This consequence was attributable to the failure of the Secretary to give adequate consideration to the factors identified by the Court of Appeals.

I believe the Court of Appeals was correct in perceiving this defect in the regulations and in concluding that the Secretary failed to give consideration to a relevant factor required by the statute. I would therefore affirm the judgment of the Court of Appeals.

---

[11] In his opinion concurring in part and dissenting in part from the Court of Appeals decision in this case, Judge MacKinnon stated:

"The only villain here is the level of need which has not been adjusted to reflect sky-rocketing costs of living. However well-intentioned, the court cannot through a remand to the Secretary affect the inflationary pressures which are particularly burdensome to people on fixed incomes." 203 U. S. App. D. C., at 155, 629 F. 2d, at 189.

I believe, however, that although the courts and the Secretary cannot affect inflation, the Secretary can and should, as was done here, consider the effects of inflation on a determination of what income is "available" to an institutionalized spouse.