JOY M. THORNE, APPELLANT v. NORTH CAROLINA DEPARTMENT OF HU-
MAN RESOURCES, NORTH CAROLINA DIVISION OF SOCIAL SERV-
ICES, APPELLEES

No. 857SC1334

(Filed 19 August 1986)

**Social Security and Public Welfare § 1— AFDC-medically needy assistance calcula-
tion of eligibility income—federal and state tax refunds**

The treatment of an income tax refund as a resource in determining
AFDC eligibility while treating an income tax refund as income in determining
AFDC-medically needy eligibility violates the "same methodology" require-
ment of 42 U.S.C. Sec. 1396a(a)(10)(C)(i)(III), the federal Medicaid statute.
N.C.G.S. § 108-51, 10 N.C.A.C. 49B .0307(d)(1).

APPEAL by petitioner from *Stephens, Judge.* Judgment en-
tered 16 September 1985 in Superior Court, WILSON County.
Heard in the Court of Appeals 9 April 1986.

*Attorney General Lacy H. Thornburg by Associate Attorney
General Cathy J. Rosenthal for the appellee.*

*Eastern Carolina Legal Services, Inc. by David H. Harris,
Jr., and N. C. Legal Services Resource Center, Inc., by Pam Sil-
berman, for petitioner appellant.*

COZORT, Judge.

Petitioner applied for Aid to Families with Dependent
Children (hereinafter referred to as AFDC) medically needy as-
sistance. The Wilson County Department of Social Services (here-
inafter referred to as DSS) calculated petitioner's eligibility
income, including therein her federal and state income tax
refunds. Under the North Carolina AFDC program, an income tax
refund is considered as a resource, not as income, in determining
AFDC eligibility. The question presented by this appeal is
whether treatment of an income tax refund as income in deter-
mining eligibility of an *AFDC-medically needy applicant* while
treating an income tax refund as a resource in determining eligi-
bility of an *AFDC applicant* violates the federal Medicaid statute.
We hold that it does.

The facts of this case are not in dispute. Petitioner Joy M.
Thorne applied for Medicaid on 17 April 1984. Ms. Thorne, at the

time of the administrative proceeding below, was a single head of household responsible for raising two minor children. She worked at the local Blue Bell Factory in Wilson, North Carolina. Ms. Thorne received income of $400-$500 per month from Blue Bell and $190 in Social Security benefits for her children. In February of 1984, Ms. Thorne's oldest child was shot in the eye and severely injured. The child required extensive medical treatment, including four operations. Because of these medical needs, petitioner applied for retroactive medical assistance pursuant to the Aid to Families with Dependent Children—Medically Needy program. She was found eligible for AFDC-medically needy benefits, but was required to "spend-down" $1,356.88 in medical expenses before she could receive any benefits. The $1,356.88 "spend-down" was calculated by determining the amount of income Ms. Thorne had and then subtracting from that amount the AFDC-medically needy income eligibility limit. When calculating petitioner's income, the Wilson County DSS included a federal tax refund of $665.00 and a state tax refund of $71.00.

The petitioner appealed the Wilson County DSS's decision contending that her federal and state income tax refund should not have been considered as income but should have been considered a resource (not included in determining amount of spend-down). The DSS decision was upheld at all administrative levels, including the North Carolina Department of Human Resources. After exhausting all her administrative remedies, Ms. Thorne petitioned the Superior Court of Wilson County for judicial review, requesting the superior court to reverse and modify the decision of the Department of Human Resources. The superior court affirmed the decision of the North Carolina Department of Human Resources upholding the designation of petitioner's income tax refund as income in determining AFDC-medically needy eligibility.

The sole issue presented by this appeal is whether the treatment of income tax refunds as income in determining AFDC-medically needy eligibility while at the same time treating income tax refunds as a resource in determining AFDC eligibility violates the requirements of the federal Medicaid statute. For the reasons set forth below we hold such disparate treatment violates the federal Medicaid statute.

The Medicaid program is a cooperative, cost-sharing program between federal and state governments which " 'provid[es] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons.' " *Schweiker v. Gray Panthers*, 453 U.S. 34, 36, 69 L.Ed. 2d 460, 465, 101 S.Ct. 2633, 2636 (1981), *quoting Harris v. McRae*, 448 U.S. 297, 301, 65 L.Ed. 2d 784, 100 S.Ct. 2671, 2680 (1980). Participation in the program is optional; however, once the State opts to participate, it must develop a plan which complies with federal law. *Harris v. McRae, supra*. There are two classes of eligible persons under Medicaid: the "categorically needy" and the "medically needy." The "categorically needy" are those persons eligible for cash assistance under (1) the AFDC program, 42 U.S.C. Sec. 601, *et seq.*, or (2) the Supplemental Security Income program (SSI), 42 U.S.C. Sec. 1381, *et seq.* The "medically needy" are those persons who meet the nonfinancial eligibility requirements for AFDC or SSI, but whose income or resources exceed the financial eligibility requirements of the relevant program. The "medically needy" qualify for assistance because their income and resources are insufficient to pay for necessary medical care. This appeal concerns a person who, but for income or resources, would qualify for AFDC; she is known as "AFDC-medically needy."

Providing coverage for the medically needy is optional for states electing to participate in the Medicaid program. 42 U.S.C. Sec. 1396a(a)(10)(C). North Carolina has opted to provide coverage to the medically needy. G.S. 108-51. Having opted to provide benefits to both AFDC and AFDC-medically needy, the State must use the same eligibility standards for each group. 42 U.S.C. Sec. 1396a(a)(10)(C)(i)(III); *Morris v. Morrow*, 783 F. 2d 454 (4th Cir. 1986). A regulation promulgated by the Secretary of the Department of Health and Human Services ("Secretary") in 1986 requires states to treat income tax refunds as a resource in determining eligibility under the AFDC program. 51 Fed. Reg. 9205. Prior to this regulation a state could treat an income tax refund as income or a resource in computing eligibility under the AFDC program. North Carolina treated an income tax refund as a resource when determining eligibility under the AFDC program but treated an income tax refund as income when determining eligibility under the AFDC-medically needy program. 10 N.C.A.C. 49B .0307(d)(1).

The statutory section at issue here, 42 U.S.C. Sec. 1396a(a)(10)(C)(i)(III) requires the State to use a "single standard" in determining income and resource eligibility for all Medicaid groups and to use the "same methodology" in determining the eligibility of AFDC-medically needy as it uses in determining AFDC eligibility. That section provides that if a state plan allows assistance for the medically needy,

> the plan must include a description of (I) . . . (II) . . . (III) the single standard to be employed in determining income and resource eligibility for all such groups, and the methodology to be employed in determining such eligibility, which shall be the *same methodology* which would be employed under the supplemental security income program in the case of groups consisting of aged, blind, or disabled individuals in a State in which such program is in effect, and which shall be the *same methodology* which would be employed under the appropriate State plan . . . to which such group is most closely categorically related . . . . (Emphasis added.)

42 U.S.C. Sec. 1396a(a)(10)(C)(i)(III). Thus, we must determine whether the disparate categorization of an income tax refund in determining AFDC and AFDC-medically needy eligibility violates the "same methodology" requirement of 42 U.S.C. Sec. 1396a(a)(10)(C)(i)(III).

The statutory scheme at issue has been described as "a statute of unparalleled complexity," *DeJesus v. Perales*, 770 F. 2d 316, 321 (2d Cir. 1985), and " 'almost unintelligible to the uninitiated,' " *Schwieker, supra*, at 469, *quoting Friedman v. Berger*, 547 F. 2d 724, 727 n. 7 (2d Cir. 1976); however, the language of Sec. 1396a(a)(10)(C)(i)(III) clearly requires the same methodology be used by a state for computation of Medicaid eligibility of AFDC applicants as for AFDC-medically needy applicants. There is no indication in the language "shall be the same methodology" that any leeway exists to adopt a different methodology because of the differences in the AFDC and AFDC-medically needy programs. A review of the legislative history is illuminating.

The original counterpart to the present Sec. 1396a(a)(10)(C)(i) in the 1965 Act was Sec. 1902(a)(10)(B)(i). The original section required states choosing to provide Medicaid to the medically needy to determine the applicant's Medicaid eligibility using "compara-

ble" criteria to those used to determine eligibility for the related cash assistance program. Pub. L. No. 89-97 Sec. 1902(a)(10)(B)(i), 79 Stat. 286, 345 (1965). The "comparable" standards language which remained in the Act until 1981, was interpreted by the Secretary and the courts to mean that a state was required to treat eligibility criteria for the medically needy in the same way that they were treated for the related cash assistance program. *See, e.g.,* 42 Fed. Reg. 2685 (1977) ("[A]ll aged, blind, and disabled persons . . . must have their eligibility determined using all SSI eligibility rules except for — and only except for — higher dollar amounts for income and resource eligibility levels . . . ."); *Caldwell v. Blum,* 621 F. 2d 491, 495-98 (2d Cir. 1980) (state's restrictions on transfer of assets by medically needy impermissible where no such restrictions were imposed on the categorically needy), *cert. denied,* 452 U.S. 909 (1981); *Greklek v. Toia,* 565 F. 2d 1259, 1261 n. 5 (2d Cir. 1977) (State's use of a dual system to determine Medicaid eligibility violates the core statutory and regulatory requirement that AFDC recipients and the AFDC-related medically needy be treated the same with respect to allowable deductions from income), *cert. denied,* 436 U.S. 962 (1978); *Friedman v. Berger,* 547 F. 2d 724, 728 (2d Cir. 1976) (income disregarded in allowing SSI eligibility must likewise be disregarded in determining eligibility of SSI — related medically needy), *cert. denied,* 430 U.S. 984 (1977).

The Omnibus Budget Reconciliation Act of 1981 (OBRA) Pub. L. No. 97-35 Sec. 2171(a)(3), 95 Stat. 807 replaced 1902(a)(10)(B)(i) as amended by Sec. 1396a(a)(10)(C)(i) with a much less complex provision. The OBRA required only that state Medicaid plans for the medically needy "include a description of . . . the criteria for determining eligibility of individuals in the [medically needy] group for medical assistance." Pub. L. No. 97-35, Sec. 2171(a)(3)(i), 95 Stat. 807. The Secretary interpreted this change as allowing states to use different methodologies for treating income and resources in determining eligibility for medically needy and categorically needy. *DeJesus, supra,* at 325. The regulations promulgated by the Secretary stated the following:

## Treatment of Income and Resources

1. *Provisions*: States are no longer required to apply a uniform methodology for treating income and resources in such matters as deemed income, interest, court-ordered

support payments, and infrequent and irregular income. Rather, the State plan must specify the methodology that will be used; and that methodology must be reasonable.

2. *Discussion*: Before the 1981 Amendments, the methodology for treatment of income and resources of the medically needy depended on the individuals' relationship to a specific cash assistance program. For example, the methodology for deeming the income of medically needy aged, blind, and disabled was taken from the SSI program. This was based on the former wording of section 1902(a)(10) of the Act that described the medically needy, in part, as individuals who "except for income and resources" would be eligible for cash assistance and for Medicaid as categorically needy. . . .

> Section 2171 of the 1981 Amendments revised the Medicaid statute so that the direct linkage between the cash assistance program is no longer explicit. . . . Therefore, we have concluded that the State need not adopt the methodology of a related cash assistance program in treating income and resources of the medically needy. . . .

Medicaid Program; Medicaid Eligibility and Coverage Criteria, 46 Fed. Reg. 47976, 47980.

In response to the Secretary's regulations Congress enacted the present "same methodology" requirement of 42 U.S.C. Sec. 1396a(a)(10)(C)(i)(III). *See* Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, Sec. 137(a)(8), 96 Stat. 324, 378. That section explicitly states that the methodology used by the states shall be the same methodology which would be employed under the related cash assistance program. *Id.* The legislative history of the current provision clearly demonstrates that the "same methodology" language of Sec. 1396a(a)(10)(C)(i)(III) requires states to use the same methodologies in determining such matters as income, interest, court-ordered support payments, and infrequent and irregular income in the AFDC-medically needy program as it uses in the AFDC program. *DeJesus, supra*, at 326.

In 1984, Congress imposed a moratorium on disapproving state Medicaid plans that might be inconsistent with the "same

methodology" requirement. *See* H. R. Rep. No. 861, 98th Cong., 2d Sess. 1366-67 (1984), *reprinted in* 1984 U.S. Code Cong. & Ad. News 2055. Nothing in the moratorium suggests that Sec. 1396a(a)(10)(C)(i)(III) no longer requires the "same methodology" be employed in determining eligibility of the medically needy. Until Congress amends or rescinds Sec. 1396a(a)(10)(C)(i)(III), we will apply that section as it was enacted.

Basic to the determination of Medicaid eligibility is the categorization of an applicant's financial receipts as income or resources. After this categorization is done then the amount of income and resources determined by the categorization is compared to the eligibility standard. A "methodology" is "a body of methods" or "a way, technique or process of or for doing something." *Webster's New Collegiate Dictionary* 747 (9th ed. 1983). In the context of Medicaid, the "methodology" is the means of computing or categorizing what is income and what is a resource. It is clear from the statute that "methodology" refers to the treatment of receipts as income or resources. Thus, whether a certain receipt is considered as income or a resource it must be the same for AFDC applicants as it is for AFDC-medically needy applicants. The statute, its legislative history, and the applicable case law invite no other interpretation.

The Department of Human Resources contends that the State is not required to use the "same methodology" because the "spend-down" requirement is not part of the AFDC program. The Department's argument is misplaced. The spend-down must be based on the "correct" categorization of income and resources. Simply stated, if a receipt is considered as income in the AFDC program, it must be considered as income in the AFDC-medically needy program. Thereafter, the computation of the spend-down is determined by the applicable state and federal legislation. *See DeJesus, supra.*

We hold that the treatment of an income tax refund as a resource in determining AFDC eligibility while treating an income tax refund as income in determining AFDC-medically needy eligibility violates the "same methodology" requirement of the federal Medicaid statute. The order of the superior court is

Reversed and remanded.

Judges BECTON and PHILLIPS concur.