CLONINGER v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[203 N.C. App. 345 (2010)]

ELLA MAE CLONINGER, Deceased (Medicaid Recipient) Represented by ALFRED E. CLONINGER, SR., Executor of the Estate of ELLA MAE CLONINGER, Petitioners v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent

No. COA09-970

(Filed 6 April 2010)

## 1. Public Assistance— Medicaid—resource limits—unknown insurance policies

The trial court did not err by concluding that the available resources of an Alzheimer's patient were in excess of the allowable Medicaid reserve limit when she began receiving benefits where it was discovered that she had two insurance policies which her children, who held her power of attorney, had not known about when benefits began. Neither the North Carolina Administrative Code nor the Medicaid Manual require that financial resources be known, only that they be available.

## 2. Constitutional Law— revocation of Medicaid benefits—no Due Process or Equal Protection violation

A Medicaid recipient was not denied Due Process by a delay in the hearing officer's final decision on revocation of benefits where petitioners did not take advantage of their statutory right to compel the hearing officer to take action. Furthermore, there was no Equal Protection violation because the application of the statutes did not arbitrarily classify the decedent.

Appeal by Petitioners from order entered 10 February 2009 by Judge David S. Cayer in Gaston County Superior Court. Heard in the Court of Appeals 27 January 2010.

*Daniel L. Taylor, for Petitioner-Appellants.*

*Attorney General Roy Cooper, by Assistant Attorney General Jennifer L. Hillman, for Respondent-Appellee.*

BEASLEY, Judge.

Petitioners appeal from a trial court order, finding that Ella Mae Cloninger was ineligible for Medicaid benefits and that they were required to repay all funds received during the period of ineligibility. Because Ella Mae Cloninger was ineligible for the Medicaid benefits she received, we affirm.

In May 2000, Alfred E. Cloninger, Sr., and Carolyn Costner filed for Medicaid benefits on behalf of their mother, Ella Mae Cloninger. On 28 May 2000, Ella Mae Cloninger, suffering from the effects of Alzheimer's disease, entered a long-term care facility in North Carolina. Prior to Ella Mae Cloninger's admission into the facility, her children were appointed as her power of attorney.

On 2 June 2005, Petitioners' attorney informed the Gaston County Department of Social Services of the insurance policies and their respective cash values. Ella Mae Cloninger's children, acting with the power of attorney, were notified "that [Ella Mae Cloninger] had two endowment insurance policies that totaled $330,685.18." "The family [contended] that they were not aware of the two policies until they were notified as a result of a Class Action Law suit against Lutheran Brotherhood Insurance Company and were notified by the courts." After receiving notice of the insurance policies, Petitioners cashed them in and placed the funds in an account under Ella Mae Cloninger's name.

On 6 June 2005, the Gaston County Department of Social Services notified Petitioners of their intent to terminate Medicaid benefits for Ella Mae Cloninger because her assets were over the allowable reserve limit of $2,000. On 29 June 2005, the Gaston County Department of Social Services informed Petitioners that the Medicaid funds spent on Ella Mae Cloninger would be treated as an overpayment, in the amount of $142,366.44. Petitioners' attorney requested a hearing in light of the Department of Social Services' conclusion. After a series of appeals, a final decision was issued on 24 January 2008. The Chief Hearing Officer of the Department of Health and Human Services found that "[Petitioners'] reserve of $330,685.18 is in excess of the allowable reserve limit of $2,000 rendering the [Petitioner] ineligible for Medicaid benefits. Furthermore, I find [Petitioner] liable for the repayment of all Medicaid benefits paid on [their] behalf." In an order issued 10 February 2009, the trial court affirmed the final decision of the Department of Health and Human Services.

Petitioners appeal the trial court's order generally arguing that: (I) the trial court erroneously determined that Ella Mae Cloninger's available resources made her ineligible for Medicaid; and (II) the trial court erroneously failed to determine that Ella Mae Cloninger's due process and equal protection rights were violated.

I.

[1] Petitioners first contend that the trial court erroneously concluded that Ella Mae Cloninger's available resources were in excess of the allowable reserve limit when she began receiving Medicaid benefits. We disagree.

"In cases appealed from administrative tribunals, we review questions of law *de novo* and questions of fact under the whole record test." *Diaz v. Division of Soc. Servs.*, 360 N.C. 384, 386, 628 S.E.2d 1, 2-3 (2006) (citing *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 659, 599 S.E.2d 888, 894-95 (2004)). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the Commission." *In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (citation omitted). "Under the whole record test, the reviewing court must examine all competent evidence to determine if there is substantial evidence to support the administrative agency's findings and conclusions." *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988) (citation omitted). "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 530, 372 S.E.2d at 889-90 (internal quotations and citations omitted). Considering all evidence in the record, the reviewing court must determine whether there was a rational basis for the administrative decision. *Id.*

"Medicaid is a federal program that provides health care funding for needy persons through cost-sharing with states electing to participate in the program." *Luna v. Division of Soc. Servs.*, 162 N.C. App. 1, 4, 589 S.E.2d 917, 919 (2004) (internal quotations and citation omitted). The North Carolina General Assembly has authorized the creation of a Medicaid program in North Carolina. *See* N.C. Gen. Stat. § 108A-54 (2009). The Medicaid program is administered by the Department of Social Services under rules promulgated by the Department of Health and Human Services. N.C. Gen. Stat. § 108A-25(b) (2009). "Participation in the program is optional; however, once the State opts to participate, it must develop a plan which complies with federal law." *Thorne v. N.C. Dept. of Human Resources*, 82 N.C. App. 548, 550, 347 S.E.2d 88, 90 (1986) (citation omitted).

"Each state establishes its own criteria for assessing Medicaid eligibility; therefore, '[a]n individual is entitled to Medicaid if he fulfills

the criteria established by the [s]tate in which he lives.'" *Estate of Wilson v. Div. of Social Services,* —— N.C. App. ——, ——, 685 S.E.2d 135, 138 (2009) (quoting *Schweiker v. Gray Panthers,* 453 U.S. 34, 36-37, 69 L. Ed. 2d 460, 465 (1981)). The North Carolina Adult Medical Manual was developed by the Department of Health and Human Services to act as a practical guide to interpreting an applicant's potential Medicaid eligibility. *Id.*

In its policy section, the Adult Medicaid Manual explains that a potential recipient is ineligible for medicaid benefits "if countable resources exceed the resource limit or the 'reserve' limit." North Carolina Adult Medicaid Manual § 2230I (2008).

> The value of resources currently available to any budget unit member shall be considered in determining financial eligibility. A resource shall be considered available when it is actually available and when the budget unit member has a legal interest in the resource and he, or someone acting in his behalf, can take any necessary action to make it available.

N.C. Admin. Code tit. 10A, r. 21B.0310(b) (June 2008). An applicant's resources may be excluded from eligibility consideration if the Medicaid recipient is incompetent; however, resources will not be excluded from consideration if a durable power of attorney has been awarded to an individual authorized to exercise that power. N.C. Admin. Code tit. 10A, r. 21B.0310(c).

Here, in light of Ella Mae Cloninger's available assets at the time she began receiving Medicaid, the trial court appropriately determined that she was ineligible for Medicaid benefits. On 28 May 2000, Ella Mae Cloninger entered a long-term care facility and became eligible for Medicaid benefits. The applicable reserve limit for Ella Mae Cloninger was $2,000. The parties also agree that at the time she entered into the facility, Ella Mae Cloninger had two insurance policies valued at $330,685.18. Because the value of Ella Mae Cloninger's life insurance policy exceeded $10,000, they could be considered as a resource for Medicaid eligibility. *See* N.C. Admin. Code tit. 10A, r. 21B.0310(I)(6) (explaining that the cash value of a life insurance policy will not be counted "when the total face value of all cash value bearing life insurance policies does not exceed ten thousand dollars.") The value of Ella Mae Cloninger's life insurance policies exceeded the $2,000 reserve limit for Medicaid eligibility. Therefore, when Ella Mae Cloninger entered the care facility, she was ineligible for Medicaid benefits.

Petitioners argue that because they were unaware of the existence of the life insurance policies and the value of the policies, they were not "available" and should not be considered for Medicaid eligibility. However, the North Carolina Administrative Code requires only that the resources are "available" and someone acting on behalf of the recipient "can take any necessary action" to make the resources available. *See* N.C. Admin. Code tit. 10A, r. 21B.0310(b). Neither the Administrative Code nor the Medicaid Manual requires that the financial resources be "known." The cash value of Ella Mae Cloninger's life insurance policy was available before she began receiving any Medicaid benefits. In addition, no legal impediment prohibited Ella Mae Cloninger's children, acting with the power of attorney, from obtaining the funds. Moreover, the record indicates that Ella Mae Cloninger's children may have been aware of the policies but failed to determine their cash value. Ella Mae Cloninger was ineligible when she began receiving Medicaid benefits in 2000. Because Ella Mae Cloninger already received Medicaid benefits while she was ineligible, provisions of the Medicaid Manual that allow Medicaid recipients an opportunity to reduce excess funds in order to fall within the allowable limits of Medicaid eligibility were unavailable. Because Petitioners received an overpayment of Medicaid benefits in the amount of $142,366.44, the trial court correctly determined that they were liable for the overpaid amount. *See* N.C. Admin. Code tit. 10A, r. 22F.0706 (June 2008).

Accordingly, we hold that the trial court correctly determined that Ella Mae Cloninger was ineligible for Medicaid benefits and that Petitioners are liable for the overpaid amount.

## II.

**[2]** Petitioners next contend that the trial court erroneously failed to determine that the Department of Health and Human Services violated Ella Mae Cloninger's Due Process and Equal Protection rights. We disagree.

In a Medicaid context, Due Process requires "that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Goldberg v. Kelly,* 397 U.S. 254, 267-68, 25 L. Ed. 2d 287, 299 (1970); *see also* 42 C.F.R. § 431.205(d) (2009) (stating that a Medicaid hearing system must be in compliance with the standards set forth in *Goldberg*).

Following an administrative hearing, the hearing officer has 90 days from the date of the requested hearing to render his final decision. *See* N.C. Gen. Stat. § 108A-79(j) (2009). "Unreasonable delay on the part of any agency or administrative law judge in taking any required action shall be justification for any person whose rights, duties, or privileges are adversely affected by such delay to seek a court order compelling action by the agency or administrative law judge." N.C. Gen. Stat. § 150B-44 (2009).

Here, the administrative hearing officer received Petitioners' argument in September 2006, but the hearing officer's final decision was not rendered until January 2008. While the hearing officer's final decision did come for some time after the hearing date, Petitioners failed to take advantage of their statutory right to compel the hearing officer to take action. Petitioners were afforded an adequate opportunity to have their concerns addressed in a timely manner, but merely failed to take advantage of this right. Moreover, Petitioners' equal protection rights were not violated by the hearing officer's delay. Generally, "[t]he equal protection clause of the Fourteenth Amendment prevents a state from making arbitrary classifications which result in invidious discrimination." *State v. Tatum*, 291 N.C. 73, 83, 229 S.E.2d 562, 568 (1976). "Without some type of 'classification' of an individual, there is no equal protection claim." *Phelps v. Phelps*, 337 N.C. 344, 350, 446 S.E.2d 17, 20 (1994) (citation omitted). In this case, the application of the statutes do not arbitrarily "classify" Ella Mae Cloninger, resulting in discrimination. Accordingly, we affirm.

Affirm.

Judges McGEE and STEELMAN concur.