**Mamie B. MORRIS, by her guardian ad litem, Rosa M. SIMPSON, Plaintiff,**

**v.**

**Sarah MORROW, individually and in her official capacity as Secretary of the North Carolina Department of Human Resources, and Barbara D. Matula, individually and in her official capacity as Director of the Division of Medical Assistance of the North Carolina Department of Human Resources, Defendants.**

**No. C–C–84–216–M.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

June 21, 1984.

---

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF PRELIMINARY INJUNCTION

McMILLAN, District Judge.

Plaintiff brought this action against North Carolina officials to prevent termination of her Medical Assistance (Medicaid) benefits. On April 30, 1984, the court temporarily restrained defendants from terminating plaintiff's Medicaid, and that order has remained in effect pursuant to the court's order of May 4, 1984. On May 23, 1984, the court heard argument on plaintiff's motion for a preliminary injunction. Based on the findings of fact and conclusions of law set forth below, the court now preliminarily enjoins defendants from terminating plaintiff's Medicaid, pending a final decision on the merits.

The parties are substantially in agreement as to the relevant facts. At the May 23, 1984, hearing, the parties did not present additional evidence. Rather, they relied on plaintiff's verified complaint, and affidavits of Alene Matthews and of Rosa M. Simpson, plaintiff's guardian ad litem.

### FINDINGS OF FACT

1. Plaintiff Mamie B. Morris is a 93-year-old widow who resides at Providence Convalescent Residence, a skilled care nursing home in Charlotte, North Carolina (the "nursing home"). She is an invalid with large medical bills, and for some time she has been eligible for Medicaid as a medically needy recipient.

2. Defendant Sarah Morrow is Secretary of the North Carolina Department of Human Resources and is charged with the overall responsibility of administering the statewide Medicaid program.

3. Defendant Barbara D. Matula is the director of the Division of Medical Assistance of the North Carolina Department of Human Resources. In that capacity, she has immediate supervisory responsibility for the Medicaid program, including the duty to insure that the program complies with federal law.

Charles E. Johnson, Legal Services of Southern Piedmont, Inc., Charlotte, N.C., Pamela C. Silberman, Raleigh, N.C., for plaintiff.

Steven Shaber, Asst. Atty. Gen., N.C. Dept. of Justice, Raleigh, N.C., for defendants.

4. Both defendants are sued individually and in their official capacities. At all times material to this action, they have acted under color of the law, custom and usage of the State of North Carolina.

5. Plaintiff entered the nursing home in January 1983. Prior to entering the nursing home, plaintiff lived for approximately twenty years in a house that she owns at 651 Louise Avenue, Charlotte, North Carolina. The total assessed value of the house and lot is $37,190.00, and there are no mortgages on the property.

6. The nursing home is a long-term care facility that provides twenty-four-hour skilled nursing care to plaintiff.

7. Plaintiff has suffered several heart attacks during the past two years, and she suffers from arthritis. She is confined to bed or a wheelchair. In combination, her impairments make movement very difficult, and she needs assistance in bathing, getting out of bed, and going to the bathroom. She takes numerous medications and has a pacemaker. She is thus in need of twenty-four-hour skilled nursing care.

8. Plaintiff's income is $409.00 per month, including Social Security Disability Insurance Benefits of $129.90 per month, Supplemental Security Income of $204.10 per month, and rent of $75.00 per month for the house at 651 Louise Avenue, which is occupied by her daughter, Olivia Miller, and Ms. Miller's husband, Cecil E. Miller. Each of the Millers is disabled, unemployed, and dependent upon Social Security benefits.

9. Plaintiff's monthly charge for care at the nursing home is about $1,600.00. In the past, most of the charge has been paid by Medicaid.

10. Without Medicaid, plaintiff could not afford to remain in the nursing home, nor could she pay for necessary medical treatment such as nursing care and prescription medicines. Only by evicting her daughter and her daughter's husband, and then selling her house, could plaintiff pay for more than a few days' stay at the nursing home.

11. In October 1983, plaintiff received from the Mecklenburg County Department of Social Services, which administers the Medicaid program in Mecklenburg County pursuant to state standards, a letter which stated that her Medicaid benefits would be terminated unless by April 30, 1984, she made a good faith effort to sell the house at 651 Louise Avenue.

12. Plaintiff did not attempt to sell the house at 651 Louise Avenue because the house is rented to her daughter and son-in-law, and because plaintiff hoped to return to her home. Her daughter and son-in-law are disabled and rely on Social Security benefits as their sole source of income.

13. In the state regulations, Medicaid Manual, and other instructions and memoranda, defendants have established a set of guidelines by which to determine the eligibility of medically needy applicants for Medicaid. Among those requirements is the requirement that to be eligible for Medicaid a single applicant may possess no more than $1,000.00 worth of "reserve," defined generally as real property (other than a homesite or property which is income-producing) and liquid assets. N.C. Medicaid Manual § 3300.

14. Under the standards regarding income-producing property in effect at least from January 1, 1972, to September 1, 1983, real property not used as a homesite but producing income was to be "excluded from considerations in determining eligibility." N.C. Welfare Programs Manual § 2326 (1971).

15. Pursuant to the above standard, property was considered income-producing "if it generated any annual income over and above its expenses, such as taxes, maintenance, and mortgage payments." Affidavit of Alene Matthews, ¶ 11.

16. Because plaintiff's property at 651 Louise Avenue, Charlotte, North Carolina, generated net income, it was excluded from plaintiff's "reserve" for Medicaid eligibility purposes under the standards in effect on January 1, 1972.

17. In a document labeled DMA Administrative Letter No. 02–84, defendant Matula on August 26, 1983, altered the income-producing property standard set forth in paragraphs 14 and 15 above by establishing the requirement that to be regarded as exempt from reserve after September 1, 1983, income-producing property must have an equity of less than $6,000.00 and must produce an annual income of at least 6% of the property's equity (the "$6000/6% rule"). Based upon this notice and subsequently issued Medicaid Manual provisions, the Mecklenburg County Department of Social Services sought to terminate plaintiff's Medicaid.

18. But for the court's temporary restraining order of April 30, 1984, plaintiff's Medicaid would have terminated after that date.

19. Unless the court extends that order preventing termination of plaintiff's Medicaid by a preliminary injunction, plaintiff will lose her Medicaid benefits and be subject to eviction from the nursing home because she can not afford to pay the nursing home bills.

20. The termination of plaintiff's Medicaid thus would subject plaintiff to irreparable harm.

21. Defendants have shown no compelling interest against granting the relief sought by plaintiff, and they have conceded in their memorandum that the balance of hardships here lies with plaintiff. *Defendants' Brief in Response to Plaintiff's Motion for Preliminary Injunction*, May 15, 1984, p. 17.

22. The public interest in this case is in the proper enforcement of federal law and in providing necessary medical assistance to eligible recipients.

23. For the purposes of administering its Medicaid program pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, North Carolina has chosen to be a so-called "209(b) state," pursuant to Section 209(b) of Pub.L. No. 92–603, codified at 42 U.S.C. § 1396a(f).

## CONCLUSIONS OF LAW

24. The Fourth Circuit standard for preliminary injunctive relief is a balance of hardships test. As summarized by Judge Winter in *North Carolina State Ports Authority v. Dart Containerline Company, Ltd.*, 592 F.2d 749, 750 (4th Cir.1979), four factors enter into the determination of whether to grant preliminary injunctive relief: (1) plaintiff's likelihood of success in the underlying dispute; (2) whether plaintiff will suffer irreparable harm if preliminary injunctive relief is denied; (3) the injury to defendants if an injunction is issued; and (4) the public interest. The court concludes, and defendants apparently concede, that factors two through four favor plaintiff. Thus the court directs its attention to the first factor: Plaintiff's likelihood of success in the underlying dispute.

25. Plaintiff brings this action under 42 U.S.C. § 1983 to enforce Section 209(b) of Pub.L. No. 92–603, as codified at 42 U.S.C. § 1396a(f). That statute, in pertinent part, provides:

> *Notwithstanding any other provision of this subchapter* [Subchapter XIX—Grants to States for Medical Assistance Programs] ... no State ... shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of subchapter XVI of this chapter) for any month unless such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month ....

(Emphasis added.)

Plaintiff and defendants agree that this statute applies to "209(b) states" such as North Carolina and to medically needy aged, blind or disabled Medicaid recipients such as plaintiff. This statute plainly requires North Carolina to apply eligibility rules no more restrictive than its January 1, 1972, eligibility rules for medically needy aged, blind or disabled Medicaid recipients. *See Winter v. Miller*, 676 F.2d 276 (7th

Cir.1982). *See also Schweiker v. Gray Panthers*, 453 U.S. 34, 39, 101 S.Ct. 2633, 2638, 69 L.Ed.2d 460 (1981); *Randall v. Lukhard*, 709 F.2d 257, 260 (4th Cir.1983), *aff'd. in part, rev'd. in part on rehearing en banc*, 729 F.2d 966 (1984).

26. Despite the language of Section 209(b), defendants argue that they were entitled to make more restrictive their January 1, 1972, standard regarding income-producing property because administrators of the United States Department of Health and Human Services instructed them to do so and because of certain provisions relating to Medicaid included in the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA). The relevant portions of TEFRA provide that for medically needy groups a state's Medicaid plan must include

> the single standard to be employed in determining income and resource eligibility for all such groups and the methodology to be employed in determining such eligibility, which shall be the same methodology which would be employed under the supplemental security income program in the case of groups consisting of aged, blind or disabled individuals in a state in which such program is in effect
> ....

42 U.S.C. § 1396a(a)(10)(C)(i)(III). The "$6,000/6% rule" is a rule employed under the Supplemental Security Income (SSI) program.

27. Defendants' argument that TEFRA provides a statutory basis for the amendment of North Carolina's January 1, 1972, income-producing property standard has no merit for at least two reasons.

28. First, TEFRA contains no language expressly repealing Section 209(b), the accepted meaning of which is that North Carolina must apply eligibility rules no more restrictive than its eligibility rules of January 1, 1972, for medically needy Medicaid recipients. Defendants cite no statute or legislative history evidencing that Congress intended TEFRA to repeal or limit Section 209(b). TEFRA, therefore, does not expressly or impliedly repeal or limit the Section 209(b) requirement that North

Carolina employ its January 1, 1972, income-producing property standard. "It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored" ..., and whenever possible, statutes should be read consistently. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982).

Moreover, the opening language of Section 209(b) prohibits repeal by implication, for the statute begins: "Notwithstanding any other provision of this subchapter ...." Section 209(b) thus continues in effect in "209(b) states" such as North Carolina, and subsequently enacted statutes are subordinate to Section 209(b) unless they expressly state otherwise.

If the TEFRA language means that a statute must comply with SSI eligibility rules even when those rules are more restrictive than a state's January 1, 1972, eligibility rules, TEFRA's Medicaid provision, cited above, can not apply in Section 209(b) states such as North Carolina.

29. Second, the Medicaid provisions of TEFRA distinguish between "standards," which must be the same for all medically needy groups of Medicaid recipients, and "methodologies," which must be the same as employed under the SSI program for aged, blind or disabled individuals. For TEFRA to support defendants' desired "$6,000/6% rule," that rule must be considered a "methodology" rather than a "standard." Such an interpretation contradicts common sense, dictionary definitions and legislative and administrative history. The "$6,000/6% rule," like North Carolina's January 1, 1972, income-producing property rule, is a standard, not a methodology.

As standards for determining Medicaid eligibility, North Carolina's income-producing rules for medically needy recipients must be consistent with each other, but they need not be the same as the SSI rules. This section of TEFRA thus does not require or permit defendants to adopt a standard more restrictive than North Carolina's

January 1, 1972, standard regarding income-producing property.

■ 30. Defendants can not rely on administrative instructions from the United States Department of Health and Human Services to support their alteration of the income-producing property standard if the agency's interpretation violates federal statutory law. Here the agency's position is clearly inconsistent with the plain meaning of Section 209(b). Hence the Health and Human Services interpretations are entitled to no deference and provide no basis for defendants' unlawful change in the Medicaid eligibility standards regarding income-producing property.

31. Under Section 209(b), 42 U.S.C. § 1396a(f), North Carolina need provide Medicaid only to medically needy persons who are or would have been eligible under its January 1, 1972, eligibility requirements. Pursuant to those eligibility requirements, plaintiff remains eligible for Medicaid.

32. Based on the foregoing findings and conclusions, there is substantial likelihood that plaintiff will prevail on the merits in this action.

IT IS THEREFORE ORDERED:

1. That defendants are preliminarily enjoined from terminating plaintiff's Medicaid benefits pending the final outcome of this action.

2. That plaintiff shall be required to post no security.