**Winona E. RUBIN, Director of Department of Human Services, State of Hawaii, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D.,\* Secretary of Health and Human Services, in his official capacity, Defendant.**

**Civ. No. 88–00767 DAE.**

United States District Court, D. Hawaii.

Aug. 22, 1989.

Warren Price, III, Atty. Gen., and Thomas D. Farrell, Deputy Atty. Gen., Honolulu, Hawaii, for plaintiff.

Daniel Bent, U.S. Atty., and Michael Chun, Asst. U.S. Atty., Honolulu, Hawaii, for defendant.

DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND FOR DECLARATORY AND INJUNCTIVE RELIEF

DAVID A. EZRA, District Judge.

I. INTRODUCTION

This case presents a novel and important question to both the State of Hawaii and the federal government, the resolution of which significantly impacts the State of Hawaii's present no-fault insurance scheme. Accordingly, this court notes at the outset that the conclusion reached here extends beyond the confines of the particular matter at issue.

Plaintiff, in behalf of the Department of Human Services ("DHS") of the State of Hawaii (the "State"), has filed this action for declaratory and injunctive relief, seeking judicial review of a disallowance decision by the Departmental Appeals Board ("Board") of the United States Department of Health and Human Services ("HHS").

Before the court are both parties' cross-motions for summary judgment filed in this

---

\* Pursuant to Fed.R.Civ.P. 25(d)(1), the court substitutes Louis W. Sullivan, M.D., successor to the original defendant Otis R. Bowen, M.D., as the Secretary of Health and Human Services.

matter pursuant to Rule 56, Federal Rules of Civil Procedure. The parties agree that there are no genuine issues of material fact which preclude this court from rendering a decision on the motions before it.

## II. JURISDICTION

The court's jurisdiction is undisputed and rests upon 28 U.S.C. §§ 1331, 1346, 1361 and 2201–02. *See also, Oregon Dept. of Human Resources v. Dept. of Health and Human Services,* 727 F.2d 1411 (9th Cir. 1983) (district court has jurisdiction to review decisions of HHS's Grant Appeals Board upholding disallowances).

## III. BACKGROUND

### A. *The Legal Framework*

Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.,* establishes a federal-state program known as "Medicaid" to enable states to provide medical services to persons whose income is insufficient to meet the costs of these services. *See generally, Schweiker v. Hogan,* 457 U.S. 569, 571, 102 S.Ct. 2597, 2600, 73 L.Ed.2d 227 (1982). "The Federal Government shares the costs of Medicaid with the states that elect to participate in the program. In return, participating states are to comply with requirements imposed by the Act and by the Secretary of Health and Human Services." *Atkins v. Rivera,* 477 U.S. 154, 156, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131 (1986), *citing* 42 U.S.C. § 1396a; *Schweiker v. Gray Panthers,* 453 U.S. 34, 36–37, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981). The Health Care Financing Administration ("HCFA") is the division of HHS charged with developing program policies, setting standards, and ensuring compliance with federal Medicaid legislation, regulations, and policies.

Section 1903(*o*) of the Social Security Act (42 U.S.C. § 1396b(*o*)), passed in 1977, amended the Medicaid statute to prohibit federal funds participation ("FFP") in payments where private insurers treat the Medicaid program as a primary payer:

> Notwithstanding the preceding provisions of this section [concerning Medicaid FFP], no payment shall be made to a state under the preceding provisions of this section for expenditures for medical assistance provided for an individual under its state plan approved under this title [XIX] to the extent that a private insurer (as defined by the secretary by regulation) would have been obligated to provide such assistance but for a provision of its insurance contract which has the effect of limiting or excluding such obligation because the individual is eligible for or is provided medical assistance under the plan.

Public Law 95–142 (approved October 25, 1977).

The legislative history makes clear that this amendment was designed to prevent the practice of some state-regulated private insurers of limiting their liability to amounts not paid by Medicaid, and thus making Medicaid the payer of first resort.[1]

In 1980 the Secretary issued regulations including within the definition of "private insurer" for purposes of § 1903(*o*) "[a]ny commercial insurance company offering health or casualty insurance to individuals or groups." 42 C.F.R. § 433.136 (1988).

---

1. Under current law, states or local agencies administering medical assistance plans are required to take all reasonable measures to ensure that third parties legally liable to pay for any medical care rendered to Medicaid recipients meet their legal obligations. However, some private insurance policies contain a provision that limits the insurance companies' liability to the amount not covered by Medicaid. In some cases, state insurance commissioners have not taken action to stop this practice. When it occurs, the Medicaid program is forced to assume the costs despite the existing subrogation requirement.

The bill would provide an incentive to states to stop this practice by stopping all federal matching payments for expenditures made under the plan for care or services provided to the extent the private insurer (as defined by the Secretary) would have been obliged to pay except for a provision of its contract which has the effect of limiting or excluding such obligation because the individual is receiving assistance under Medicaid.

S.Rep. No. 453, 95th Cong., 1st Sess. 30 (1977).

Hawaii's no-fault insurance statute, enacted in 1974, requires all motor vehicles to have no-fault coverage to compensate those injured in automobile accidents. Hawaii Revised Statutes (H.R.S.) § 431:10C–101 *et seq.* (formerly § 294–1 *et seq.*). Established as part of the law was a joint underwriting plan in which all automobile insurance companies doing business in the State of Hawaii must participate. H.R.S. Section 431:10C–401 (formerly § 294–20). One feature of this plan is to make special no-fault coverage available without cost to:

[a]ll licensed drivers receiving public assistance benefits consisting of medical services or direct cash payments through the department of human services, or benefits from the supplemental security income program under the social security administration.

H.R.S. § 431:10C–407(b)(2)(A) (formerly § 294–22(b)(2)(A)).

This free insurance includes liability coverage but excludes no-fault medical and rehabilitation benefits for injured Medicaid recipients, i.e., free policyholders. H.R.S. § 431:10C–407(b)(3).

The State of Hawaii's model insurance agreement incorporates this exclusion and specifies that a no-fault policy issued at no cost to a recipient of public assistance shall not include benefits consisting of medical expenses, rehabilitation, and work loss.

In other words, under Hawaii's law, when a driver with free no-fault coverage is involved in an automobile accident, anyone injured (driver, passenger, or pedestrian) who is also a Medicaid recipient is ineligible for no-fault medical benefits.

## B. *The Administrative Review Process*

On March 20, 1985 the United States General Accounting Office ("GAO") issued a report on its review of Hawaii's Medicaid program to HCFA's administrator, which report concluded that:

Hawaii's no-fault insurance law excludes coverage of no-fault medical benefits for Medicaid recipients who receive the insurance without charge. As a consequence, Medicaid pays the medical costs

for a Medicaid recipient who is injured in an automobile covered by insurance obtained without charge to the recipient although this insurance's no-fault benefits would cover the medical costs for non-medicaid passengers or a non-Medicaid driver in the same vehicle. Under state law, therefore, Medicaid is treated as the primary payor. Section 1903(*o* ), in our opinion, precludes federal participation in Medicaid payments made because of this exclusion.

GAO, *Report of March 20, 1985: Medicaid Overpayments Made to Hawaii Should be Disallowed* 2–3 [hereinafter *GAO Report* ].

In the same report GAO estimated that between October 1, 1981 and September 30, 1984 the State had paid some $1.4 million in federal funds on claims arising from automobile accidents for which "Medicaid was not treated as a secondary payor." *GAO Report* at 3–4.

Acting on the GAO Report, HCFA conducted a comprehensive review of Hawaii's no-fault insurance law. With a view to evaluating the law's impact on the Medicaid program, HCFA analyzed 54 case file records in each of which total medical costs claimed exceeded $10,000.00 per accident. The reviewers determined that in case reference number 024637301, the case at issue here, the Health Care Administration Division of Hawaii's Department of Human Services (HCAD) had, in what the reviewers considered a violation of § 1903(*o* ), treated Medicaid as the primary payer on a claim amounting to $5,898.00 in medical assistance payments. Accordingly, HCFA found that federal matching funds of $2,949.00 had been claimed by the State improperly.

In an August 10, 1987 letter to HCAD, HCFA sought a "decreasing adjustment" (repayment) of $2,949.00; requested that HCAD "identify and refund the federal share of any improper payments made in accidents where no-fault medical benefits were excluded from July 1, 1984 through June 30, 1987;" and requested that HCAD "stop treating Medicaid as the primary payer when no-fault medical insurance benefits are excluded for public assistance recipi-

ents who are injured in automobile accidents, effective July 1, 1987."

The State responded in a letter dated September 9, 1987, which raised many of the points made in support of the State's motion for summary judgment. On March 14, 1988 HCFA's Regional Administrator notified the State of his determination to disallow the $2,949.00 previously identified by HCFA's review on the grounds that, pursuant to § 1903(*o*), this amount was not subject to FFP.

The State filed a Notice of Appeal of the disallowance with the Departmental Appeals Board ("Board") on March 31, 1988. The Board issued its decision, upholding the disallowance, on September 1, 1988.

### C. *Disallowance In Matter No. 02463701*

Giving rise to the appealed-from disallowance was an automobile accident which occurred on May 21, 1981, when a car driven by Queenie Kanakanui, a welfare recipient, was struck by a car drive by Eric Pule. Seated in the front seat of Mrs. Kanakanui's car when the accident occurred was Alice Bras, also a welfare recipient. As a result of the accident, Ms. Bras sustained severe injuries.

The automobile driven by Mrs. Kanakanui had a free no-fault policy—which type of policy, as noted above, includes liability coverage, but excludes medical coverage.[2]

Ms. Bras filed suit in state court. In settlement of that suit, she recovered $25,-000.00 from Mrs. Kanakanui's free liability policy and $25,000.00 from Mr. Pule's no-fault policy. Ms. Bras was unable, however, to recover any monies for medical payments from Mrs. Kanakanui's policy which, in accordance with Hawaii law, excluded medical benefits for welfare recipients. Therefore, despite the claims Ms. Bras was allowed to make against the liability coverage of Kanakanui and Pule,

some $14,000.00 in medical expenses resulting from the accident remained to be paid for by the Medicaid program as primary payer. The State ultimately recouped roughly 60% of this amount, leaving $5,898.00 in medical expenses which the Medicaid program absorbed. The federal government's one-half share of this, $2,949.00, was the amount of the disallowance in question.

The State did not dispute that without the exclusion at issue here, in Mrs. Kanakanui's policy, the $5,898.00 in medical expenses paid by Medicaid would have been covered by the insurance policy.

### IV. DISCUSSION

In his March 14, 1988 notice, the Regional Administrator elaborated the reasoning behind the disallowance, which the Board ultimately affirmed:

> Hawaii's no fault insurance law provides a system of reparations for losses associated with motor vehicle accidents. Hawaii Revised Statutes (H.R.S.) § 294–1 *et seq.* Anyone injured by a driver with standard no fault coverage is eligible for specified medical benefits. *See* H.R.S. §§ 294–2(10)(A), 294–4(1). The law also makes special, limited no fault coverage available without charge to Medicaid recipients. H.R.S. § 294–22(b)(2)(A). This free insurance does not include the standard medical coverage. Rules of the Insurance Division, State of Hawaii, ch. 23, §§ 16–23–5 and 16–23–73. Under this system when a vehicle covered by free no fault insurance is involved in an accident an injured Medicaid recipient (driver, passenger, or pedestrian) is ineligible for medical coverage. Victims of the same accident who are not receiving Medicaid are entitled to standard no fault medical coverage. *Accordingly, with respect to the disallowed claim, Medicaid was placed in the role of primary payer for a recipient injured by a vehicle with*

---

**2.** The State emphasizes that the liability coverage provided by Mrs. Kanakanui's free policy "did not exclude benefits for Medicaid recipients;" that is, parties other than Mrs. Kanakanui injured in an accident involving Mrs. Kanakanui could recover from the liability portion of

Mrs. Kanakanui's policy even if such parties were, as was the case here, also welfare recipients. However, neither Mrs. Kanakanui nor passengers in her car who were welfare recipients could receive medical benefits from her policy.

*free no fault coverage. This same policy would have paid her medical costs had she been ineligible for public assistance. Section 1903(o) precludes FFP in medicaid payments made as a result of this exclusion.*

Notice of Disallowance of Federal Financial Participation pp. 1–2 (Dep't Health & Human Serv., March 14, 1988) (emphasis added).

Hawaii concedes that the free no-fault policies provided under its program exclude Medicaid recipients from medical benefits available to all other persons. The difference in the coverage extended by standard no-fault policies and that extended by the free policies is made explicit by State Regulations, Rules of the Insurance Division, State of Hawaii, ch. 23 §§ 16–23–5 and 16–23–73, as well as the policies themselves.

However, the State challenges the Regional Administrator's disallowance, which was ultimately affirmed by the Board. The State contends that HHS's interpretation of § 1903(o) extends that provision to a situation which could not have been foreseen by Congress at the time it was enacted, and which it "clearly was not intended to prevent." The State urges, that correctly interpreted, § 1903(o) does not prohibit the practice of Hawaii insurers of excluding welfare recipients from "medical" coverage under the State's no-fault policies, but prohibits only the exclusion of such recipients from "liability" coverage under those policies.

The precise question before this court, then, is one of statutory construction: whether § 1903(o)'s prohibition encompasses Hawaii's no-fault scheme. This question has not been expressly addressed by Congress, either in the language of the statute itself or in the legislative history. However, the Supreme Court has offered explicit instructions regarding the proper way for this court to proceed in this situation:

[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the Court is whether the agency's answer is based on a permissible construction of the statute.... [A]

court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

*Young v. Community Nutrition Institute,* 476 U.S. 974, 980, 106 S.Ct. 2360, 2364, 90 L.Ed.2d 959 (1986) (*quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)).

With these instructions in mind, this court finds that the Board's disallowance decision was based on a permissible construction of § 1903(o) and was sufficiently rational to preclude a court from substituting its judgment for that of the Board. 476 U.S. at 981, 106 S.Ct. at 2365. Indeed, it would be difficult for this court to find any permissible construction of § 1903(o) other than that given by HCFA.

The State's position, that Congress intended § 1903(o) to apply only to "liability" insurance is belied by the Board's observation that

the [Senate] Report refers to "insurance policies" and "insurers" generally without any indication that the statute was meant to apply only to a particular type of insurance coverage.

*In re Hawaii Department of Human Services,* No. 89–59 (Dep't Health & Human Serv., Sept. 1, 1983) (Decision 983) [hereinafter *Board Decision* ].

The narrow construction of § 1903(o) urged by the State is contradicted as well by the Secretary's regulation including within the definition of "private insurer," for purposes of § 1903(o), "[a]ny commercial insurance company offering health or casualty insurance to individuals or groups." 42 C.F.R. § 433.136 (1988).

On the basis of these considerations—the Secretary's regulation and the fact that the statute itself makes no distinction between "liability" coverage and "medical" coverage—the Board could have quite reasonably found, as it did, that Hawaii's no-fault program "institutionalizes" the very practice that § 1903(o) was drafted to discourage.

This interpretation by the Board of § 1903(*o*) as encompassing Hawaii's insurance program is entitled to great deference. *Columbia Basin Land Protection Association v. Schlesinger,* 643 F.2d 585, 599 (9th Cir.1981), *citing Zenith Radio Corp. v. U.S.,* 437 U.S. 443, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978). In this regard the Board's view "does not have to be the only reasonable construction or the interpretation that a court would choose if first presented with the question; it only must be a reasonable interpretation." 643 F.2d at 600, *citing Train v. Natural Resources Defense Council, Inc.,* 421 U.S. 60, 75, 95 S.Ct. 1470, 1479, 43 L.Ed.2d 731 (1975). Plainly, the Board's interpretation meets this test.

On the other hand, the State's contention that when Congress voiced its concern that "third parties legally liable ... pay for medical care rendered to Medicaid recipients" it was concerned only with "liability" coverage, seems contrived to narrow the application of the statute so as to permit the State's practice; in fact, this court finds no support for the construction of the statute urged by the State other than its own extra-contextual use of the phrase "third parties legally liable."

Additionally, the State has raised a number of policy arguments supporting its position. Although the issue raised by this case is one of statutory construction, rather than public policy, this court is aware of the importance to the State of the outcome here and therefore addresses each of these arguments.

First, the State argues that if the Secretary's interpretation of the statute is sustained, Hawaii will face a "Hobson's choice:" that of either abolishing its automobile insurance program for welfare recipients, or forcing the insurance carriers who underwrite these policies to bear the medical costs of persons whose care would normally be covered by Medicaid.

The premise of this argument, that the medical costs involved in this case would "normally" be absorbed by Medicaid, is incorrect. For, as the Board itself noted, "[w]here medical costs would otherwise be covered by an insurance policy [as here] ... those costs can not be viewed as 'normally' Medicaid costs in view of the section 1903(*o*) prohibition." *Board Decision* at 7.

To look at it another way, the State may mandate partial free coverage, complete free coverage, or no free coverage at all for welfare recipients; the Board's decision does nothing to restrict the State's discretion. The Board's decision, which this court affirms, simply declares that § 1903(*o*) prohibits the federal government from assuming any part of the liability that the State chooses to shoulder in lieu of the insurer. Just as the State argues that in conferring a benefit in the form of free liability coverage it was entitled to exercise its discretion, so the Congress has, by enacting § 1903(*o*), exercised its fiscal discretion and limited its role to that of secondary payer in those situations where, as here, the injured party has primary insurance coverage.

Second, the State notes its partly successful efforts, which given the structure of the Medicaid program necessarily redounded to the benefit of the federal government, at recovering 60% of the monies paid by Medicaid as primary payor. The State urges that its efforts in this regard show that "Hawaii is not allowing automobile insurance carriers to shift their obligations to the State Medicaid program." (Plaintiff's Motion for Summary Judgment, p. 13.)

This argument must also fail, for the success (or lack thereof) of the State's attempts at obtaining reimbursement for the Medicaid expenditures incurred on behalf of Ms. Bras has no bearing on the merits of the Secretary's action.

Further, in undertaking its collection efforts, the State did no more than it is obliged by statute to do. Pursuant to section 1902(a)(25)(A) of the Social Security Act, 42 U.S.C. § 1396a(a)(25)(A), each state Medicaid agency must "take all reasonable measures to ascertain the legal liability of third parties (including health insurers) to pay for care and services available under the [State Medicaid] plan." The statute further provides that in any case where

such a legal liability is found to exist after Medicaid payments have been made and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of recovery, "the State or local agency will seek reimbursement for such [Medicaid] assistance to the extent of such legal liability." Section 1902(a)(25)(B); 42 U.S.C. § 1396a(a)(25)(B); *see* 42 C.F.R. §§ 433.135—433.140 (1988).

In this connection, the court notes that but for the exclusionary provisions of Hawaii's no-fault policies, Medicaid payment would have been avoided altogether in this case—thus obviating the need for any recovery action by the State.[3]

Third, the State argues that the structure of its no-fault plan, such as it is, actually saves the federal government money. The State reasons thus: were it not for its practice of issuing free liability insurance policies to welfare drivers, Ms. Bras, the injured welfare recipient, would have received nothing from Mrs. Kanakanui, who presumably would, absent her free no-fault policy, drive uninsured. The expense to the Medicaid program would have been correspondingly greater.

This argument also lacks merit. It is, in the first place, pure speculation on the State's part that leads it to assume that Mrs. Kanakanui would violate the law by driving her car without insurance in violation of the State statute. Whereas, it is not speculation, but fact, that if the vehicle Ms. Bras was riding in had been covered by a standard no-fault policy she would have been entitled to medical benefits regardless of her status as a Medicaid recipient.

Moreover, it is irrelevant to the merits of the Board's decision whether Medicaid's coffers are relatively richer or poorer in virtue of the Medicaid statute or Hawaii's violation of it. The disposition of federal Medicaid funds is a matter to be decided by the Congress of the United States, not state legislators or the insurance industry.

In this connection the court notes finally, with respect to all of the State's policy arguments, that the State has attempted to advance what many would agree are sound objectives. But it is in the United States Congress, where the Constitution reposes the legislative function, that the policy arguments such as those raised by the State are properly made, not in the United States courts. Until and unless Congress agrees with the State and amends the statute accordingly, this court is bound to follow the law as Congress has seen fit in its wisdom to enact it.

## V. CONCLUSION

In light of the foregoing, this court grants the motion of defendant Secretary of Health and Human Services for summary judgment and thereby affirms the decision of the Departmental Appeals Board of the United States Department of Health and Human Services, and its determination that § 1903(*o*) of the Social Security Act (42 U.S.C. 1396b(*o*)) precludes federal funds participation (matching funds) under the State of Hawaii's present no-fault insurance scheme where free no-fault insurance policies, which exclude medical benefits coverage for welfare recipients, make Medicaid the primary payer in contravention of federal statute. The motion of plaintiff Director of Department of Human Services, State of Hawaii, for summary judgment and for declaratory and injunctive relief is hereby denied.

IT IS SO ORDERED.

---

**3.** In Hawaii, standard no-fault policies must provide, without regard to fault, $15,000.00 in medical rehabilitation, and wage loss benefits. Medicaid expenditures in this case were under $15,000.00.