The STATE OF NEW YORK and the New York State Department of Social Services, Plaintiffs,

v.

Donna E. SHALALA, as Secretary of the United States Department of Health and Human Services, Shirley Chater, as Commissioner of the United States Social Security Administration, and Alice M. Rivlin, as Director of the Office of Management and Budget, Defendants.

No. 95 CIV. 10259(SAS).

United States District Court, S.D. New York.

Feb. 19, 1997.

Mary Fisher Bernet, Assistant Attorney General, Office of the Attorney General of the State of New York, New York City, for Plaintiffs.

Jonathan A. Willens, Assistant United States Attorney, Southern District of New York, New York City, for Defendants.

## MEMORANDUM OPINION

SCHEINDLIN, District Judge:

Plaintiffs New York State Department of Social Services ("NYSDSS") and the State of New York (collectively "the State" or "Plaintiffs") appeal from several decisions of the Departmental Appeals Board ("DAB") of the United States Department of Health and Human Services ("HHS"). Plaintiffs seek judicial review of HHS's denial of federal reimbursement for interest costs the State incurred in the acquisition of computer equipment and building space used by the State to administer several social service programs that are partly funded by the federal government. Plaintiffs now move for summary judgment on their appeals of the DAB decisions denying them reimbursement for their computer equipment claims. Defendants cross-move for summary judgment on these same decisions. For the reasons stated below, Plaintiffs' motion is denied, and Defendants' motion is granted.

## II. BACKGROUND

### A. Statutory and Regulatory Framework

The disallowed administrative costs at issue in this action involve twelve federal public assistance programs that provide a variety of services to low income people. The programs include Social Security Disability ("SSD"), 42 U.S.C. § 420 et seq.; Supplemental Security Income ("SSI"), 42 U.S.C. § 1381 et seq.; Aid to Families with Dependent Children ("AFDC"), 42 U.S.C. § 601 et seq.; Child Support Enforcement, 42 U.S.C. § 651 et seq.; Foster Care and Adoption Assistance, 42 U.S.C. § 670 et seq.; Refugee Assistance, 8 U.S.C. § 1521 et seq.; Medicaid, 42 U.S.C. §. 1396 et seq.; Food Stamps, 7 U.S.C. § 2011 et seq.; Home Energy Assistance, 42 U.S.C. § 8601 et seq.; Work Incentive ("WIN"), 42 U.S.C. § 635 et seq.; Job Opportunities and Basic Skills Training, 42 U.S.C. § 681 et seq.; and Vocational Education programs, 20 U.S.C. § 2301 et seq. & 29 U.S.C. § 701 et seq. ("the Statutes").

Plaintiff NYSDSS is responsible for administering and supervising at the state level all public assistance programs in New York, including federal programs. See Soc. Serv. Laws § 20. As part of its duties, NYSDSS files and pursues claims for federal reimbursement of the federal government's portion of the State's administrative costs incurred in running these programs.[1] Defendant HHS administers many of these programs at the federal level, with the exception of the SSD and SSI programs, which are administered by the Social Security Administration ("SSA").[2] SSA processes state claims for reimbursement under those programs. See 42 U.S.C. §§ 421(e) & 1383(a).

HHS and SSA have specific authority to determine what costs are "necessary" for the proper and efficient administration of the programs they run. See, e.g., 42 U.S.C. § 1396b(a)(7) (Medicaid). After a determination that a cost is necessary, HHS and SSA decide whether all components of that necessary cost are "allowable". This decision is based on Office of Management and Budget

---

1. The federal government reimburses participating states, including New York, for all or part of their necessary administrative costs. For example, under the SSD and SSI programs, states that opt to make eligibility determinations at the state level are reimbursed for 100% of their necessary administrative costs. See 42 U.S.C. §§ 421(e)(SSD), § 1383(a)(SSI). By comparison, under the AFDC program, HHS reimburses 50% of the states' necessary administrative costs. 42 U.S.C. § 603(a)(3)(D).

2. HHS has no current responsibilities for programs administered by the Secretaries of Agriculture, Education and Labor. However, HHS is the cognizant agency insofar as HHS's Division of Cost Allocation has responsibility for determining cost allocation plans and processing disallowances where the issue affects more than one operating division within HHS or more than one federal department. See Memorandum of Law in Support of the Government's Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Def.Mem."),

("OMB") Circular A–87 (the "Circular"), which sets forth cost principles for federal grants to State and local governments.[3] The Circular has the force of a regulation and is incorporated by reference at 45 C.F.R. § 74.27(a). In addition to describing general cost principles, the Circular delineates specific costs that are unallowable under federal grants. The provision of the Circular under which the costs at issue in this case were disallowed provides in relevant part:

> *Interest and other financial costs.* Interest on borrowings (however represented), bond discounts, cost of financing and refinancing operations, and legal and professional fees paid in connection therewith, are unallowable except when authorized by Federal legislation.

OMB Circular A–87, Attachment B, § D.7.

### B. The Appeals

The administrative decisions under appeal here originated with three disallowances taken by components of HHS in the early 1990's. The first involved lease costs for the NYSDSS headquarters building in Albany, New York during the period from fiscal year 1977 through fiscal year 1989. A second disallowed interest payments on twelve lease purchase agreements entered into by the State's Department of Health for the procurement of computer hardware and software and related equipment for the period October 1, 1982 to March 31, 1988 ("the capital leases cases"). The third disallowance concerned interest paid on lease purchase agreements and certificates of participation ("COPS") by which the State purchased computer equipment for the period January 1, 1981 to March 31, 1991 (the "COPS case"). *See* Administrative Record of DAB Proceedings in DAB Nos. 1360, 1417 and 1537 ("AR") at 1016.

The disallowance in the COPS case is the subject of this summary judgment motion. COPS are financing instruments utilized under the Internal Revenue Code to issue tax free bonds. Answer 75. Prior to using COPS, NYSDSS had acquired computer equipment for the administration of various programs through a series of leases and purchase contracts with private computer companies. *Id.* at ¶ 72. The State continued to lease computers until 1986, when it began refinancing the equipment with COPS. The proceeds from the sale of the bonds to investors were used to acquire the computer equipment, and repayment of the bonds satisfied the debt. *Id.* at ¶ 75. The State alleges that COPS were the most economical method of procuring computer equipment, resulting in savings of at least $4.5 million. AR 1037.

The COPS disallowances originated with two audits conducted by the HHS Office of the Inspector General. Answer ¶ 80. These audits concluded that federal reimbursement for the interest on the COPS were improper. *See* HHS Audit, AR 1668–91. HHS adopted these conclusions and issued disallowances to NYSDSS in the amounts of $1,315,222 and $690,726 for the period April 1984 through March 1993. *See* AR 1016, 1513.

The State appealed to the DAB. The DAB held that interest costs incurred pursuant to the issuance of COPS for the purchase of computer equipment were unallowable under the Circular, Art. B, § D.7. *New York State Department of Social Services,* DAB No. 1417 (1993), AR 37.[4] The DAB also upheld a later disallowance involving COPS, which is also on appeal and the subject of this motion. *New York State Department of Social Services,* DAB No. 1537 (1995), AR 47.

On appeal from the DAB, the State argues that these disallowances were improper for a myriad of reasons. First, the State argues that HHS's application of the Circular to the State's interest costs conflicts with and therefore violates the various federal statutes governing all twelve programs. Next, the

---

**3.** Other OMB circulars provide cost principles for grants to universities (A–21) and non-profits (A–122).

**4.** The DAB's decision in DAB No. 1417 was based, in part, on its earlier decision in DAB No. 1360 (1992), which involved the use of COPS to acquire computer equipment for federal disabili-

ty programs. The State filed a separate action in that case, *State of New York, et al. v. Shirley Chater, et al.,* 95 Civ. 4590 (S.D.N.Y.) (JES), which was settled and dismissed. DAB No. 1360 has been incorporated into the record of this case. *See* AR 49.

State asserts that HHS's application of the Circular is arbitrary and capricious. Finally, the State argues that the Circular was improperly issued by OMB and adopted by HHS and should not be applied in this case.

## III. DISCUSSION

### A. Was OMB Circular A–87 properly issued by OMB and adopted by HHS?

#### 1. *Standard of Review*

A party is entitled to summary judgment when there is "no genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party carries the initial burden of demonstrating the absence of any genuine issue of fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). If the moving party satisfies its burden, then the burden shifts to the non-moving party to proffer evidence demonstrating that a disputed issue of material fact exists. *See Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993).

#### 2. *OMB's Issuance of the Circular*

■ As a threshold matter, the State's claim that OMB lacked the authority to issue the government-wide cost principles embodied in the Circular is without merit. OMB has been deemed "the President's principal arm for the exercise of his managerial functions." Reorganization Plan No. 2 of 1970, Message of the President, 5 U.S.C.App., *reprinted in* 1970 U.S.Code Cong. & Admin. News, 6315, 6316. One such managerial function is to provide federal agencies with consistent, government-wide policy guidance. *See* 31 U.S.C. § 1111(2) (1994); 31 U.S.C. § 18a (1970, 1958); Executive Order No. 11,541, § 1. OMB's authority to do so falls well within its management and budgetary role.

#### 3. *HHS's Adoption of the Circular*

■ Plaintiffs next argue that HHS's adoption [5] of the Circular as a regulation was improper, because HHS failed to follow the notice and comment provisions of the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 553. Under §§ 553(b) and (c), a substantive agency rule must be published in proposed form in the *Federal Register,* which gives interested persons an opportunity to participate in rulemaking. Section 553 provides an exception to notice and comment rulemaking if the agency "for good cause finds ... that notice and comment procedure ... is impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B). Although § 553 specifically exempts federal grant programs from notice and comment rulemaking, such as those at issue in this litigation, HHS announced in 1971 that it would utilize notice and comment for these programs despite the exemption. 36 Fed.Reg. 2532 (Feb. 5, 1971).

The State claims that HHS's failure to follow notice and comment rulemaking gave the State no meaningful opportunity to comment on the Circular. Defendants disagree, asserting that the State in fact had two opportunities to comment on the Circular. The first occurred in 1973, when HEW issued a *Federal Register* notice incorporating the Circular into its regulations, and requesting public comment. *See* 38 Fed.Reg. 26274, 26275 (Sept. 19, 1973). The State disputes that this was an effective opportunity for comment because the regulation was not printed as a proposed regulation, but as a final version. *Id.* The State also points to language that followed the request for comment, which stated:

> Interested persons are reminded that, as explained above, much of the following Part 74 is derived from OMB Circulars A–102, A–87, and A–21, from which DHEW cannot unilaterally deviate. Consequently, the Department's discretion to act on any comments which take issue with provisions mandated by the OMB Circulars may be limited to referral of such comments to those Federal officials who are in a position to change the circulars.

---

**5.** HHS's predecessor, the Department of Health, Education and Welfare ("HEW"), first incorporated the Circular into its regulations in 1973.

*Id.* The State alleges that there was no meaningful opportunity for comment. Defendants respond that this proviso did not foreclose the State, or any other interested party, from commenting on the Circular, but merely stated that the agency's "discretion" to alter the Circular's provisions might be limited to referring such comments to the OMB.

Whether HEW would have taken action on the State's comments in response to this notice remains an unanswered question, however, because the State never submitted comments. The State does not contend otherwise, nor does it contend that any other interested party submitted comments that were disregarded by HEW. The State provides no evidence that it chose not to comment because it was dissuaded by the language of the comment. As a result, there is no evidence in the record supporting the State's claim that the 1973 opportunity to comment was meaningless.

The State missed a second opportunity to comment on the Circular when it was revised. In 1979, OMB issued a notice requesting public comment on a partial revision to the interest provision, and proposed to make interest an allowable cost with respect to borrowing associated with buildings. 44 Fed.Reg. 37707–08 (June 28, 1979). In response, many commenters recommended that OMB extend the revision of the interest provision and make interest associated with equipment, including computer equipment, an allowable cost. *See* 45 Fed.Reg. 27363 (April 22, 1980). OMB responded to these recommendations in the 1980 notice, and declined to extend the proposed revision to assets other than buildings until further study could be completed. *Id.* OMB noted in its response that it was reluctant to delay the revision with respect to buildings until full consideration of its impact on other assets could be completed. *Id.* The State did not respond to the request for comment with respect to the building revision, nor did it respond to OMB's decision not to extend the interest provision to computer equipment.[6] In addition, the State failed to contradict the evidence showing that HHS considered and directly addressed comments concerning the interest provision's impact on the acquisition of computer equipment.

In any event, on two separate occasions, the State and any other interested parties were given an opportunity to comment on the Circular. Moreover, the State has had notice of and has failed to object to the Circular's provisions for at least twenty years. Because HHS properly adopted the Circular as a regulation, the Circular is valid and enforceable.[7]

**B. Does OMB Circular A–87 Violate Federal Law?**

*1. Standard of Review*

■ The State also contends that the Circular conflicts with federal law which, it

6. One possible explanation of why the State declined to comment is that prior to these disallowances in 1991, application of the Circular worked in the State's favor, *i.e.* had financially benefitted the State. The State therefore had no complaints about the Circular—at least, not until it was applied to the State in an unfavorable manner. Moreover, until quite recently, the State did not view the Circular as unenforceable and invalid. In a recent case, however, the State grounded part of an unsuccessful challenge to HHS Medicaid regulations on the Circular, and alleged that the Medicaid regulations violated the same federal cost allocation principles the State now challenges. *See New York v. Shalala,* 1996 WL 87240 (S.D.N.Y. Feb.29, 1996).

7. The DAB reached the same conclusion on a different ground. It found that HHS did not follow notice and comment rulemaking, but that the lack of notice and comment rulemaking did not render the Circular unenforceable because

HHS had utilized the good cause exception to notice and comment. *See* DAB No. 1537, p. 3, AR 50. The DAB concluded this from examining the preamble to the 1980 version of the Circular, which stated that proposed rulemaking was unnecessary because OMB had obtained some form of public participation before it issued the Circular. *Id.* at p. 4, AR 51. In addition, the DAB found that most of the revisions to the Circular adopted by HHS in 1980 were published by OMB in proposed form in 1979. *See* 44 Fed.Reg. 37707 (June 28, 1979) (proposed); 45 Fed.Reg. 27363 (April 22, 1980) (final). Therefore the DAB concluded that it was unnecessary for HHS to duplicate this process through its own notice and comment rulemaking. The State disputes that OMB obtained any form of public participation before issuing the Circular in the first instance, but does not refute that the revisions to the Circular were adopted pursuant to notice and comment rulemaking.

alleges, mandates federal reimbursement of the interest costs at issue here. In reviewing an agency's construction of a statute, the threshold question is whether Congress has spoken to the precise question at issue. *State of New York Dep't of Social Servs. v. Shalala,* 21 F.3d 485, 491 (2d Cir.1994). If Congress has spoken to the issue, a reviewing court must "give effect to Congress's expressed intent." *Id.* (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)). When a statute is silent or ambiguous, a court must defer to the agency's interpretation of the statute if that interpretation is based on a permissible construction of the statute and is sufficiently reasonable. *Chevron,* 467 U.S. at 844–45, 104 S.Ct. at 2782–83. Summary judgment is proper if no material issue of fact exists with respect to whether the statute and regulation are in conflict, or whether the agency's interpretation of the statute was reasonable.

2. *HHS's Interpretation of the Pertinent Statutes is Neither Contrary to Law Nor Unreasonable*

■ The State claims that Congress has directly addressed the issue of interest costs, asserting that the plain language of the Statutes requires reimbursement for interest, and that the Circular, which categorizes interest as an unallowable cost, conflicts with the Statutes and is therefore unenforceable. To support this claim, the State points to sections of the Statutes which mandate that all "necessary" costs be covered. *See, e.g.,* 42 U.S.C. § 1396b(a)(7).

The State's assertions are incorrect. Nowhere do the Statutes mention the "precise question at issue," namely whether the interest costs incurred in the procurement of computer equipment are allowable. The word "interest" does not appear in the Statutes. In fact, the manner in which Congress has addressed the issue of program costs, including interest, is to grant discretion to the Secretary of HHS to determine what costs are necessary. *See* 42 U.S.C. § 1396b(a)(7) (providing for reimbursement of state Medicaid expenses "as found necessary by the

Secretary"); 42 U.S.C. § 603(a)(3) (same with regard to AFDC).

■ Because Congress has not directly addressed the issue of interest costs for capital procurements, the Court must now evaluate whether the Secretary's interpretation of the Statutes is reasonable. *See State of New York,* 21 F.3d at 491. Congress conferred broad authority on the Secretary to prescribe standards for application of the Social Security Act, and her interpretations are entitled to "legislative weight." *Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 2640–41, 69 L.Ed.2d 460 (1981). The Court may not substitute its own understanding of the Statutes and the Circular for that of the agencies charged with administering them. *See Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781.

The adoption of the Circular is an exercise of the Secretary's broad discretion to determine what costs are necessary. To that end, the Circular serves to outline general cost principles for state grantees, and to specify which cost components of a necessary cost are allowable and which are not. Interest is one of many unallowable costs under the Circular. *See* OMB Circular A–87, Art. B., § D (listing, *inter alia,* interest, entertainment, fines, and legislative expenses as unallowable costs). The federal government can reasonably decide that it will pay a share of the cost of acquiring equipment, but not the entire cost. Disallowing interest costs is not *per se* unreasonable, particularly when one considers the fiscal impact of the types of interest that federal programs could incur if interest were not disallowed.

■ Countering this argument, the State contends that the particular interest disallowance here is unreasonable because those costs (in its estimation) were necessary: NYSDSS needed the computers but could not purchase them outright, and COPS, which involve interest costs, were the most economical means of acquiring them. This interpretation of the Statutes may be as reasonable as the Secretary's; however, this is not the standard the Court applies in reviewing an agency's construction of a statute. Even where the State offers a reasonable alternative interpretation of a statute, the

decision of where to "draw the line" with respect to reimbursing costs is left to the discretion of the agency.[8] *See State of New York by Perales v. Sullivan*, 894 F.2d 20, 27 (2d Cir.1990). HHS's interpretation of the Statutes need only be reasonable—it need not be the *only* reasonable interpretation.[9] *See Connecticut Dep't of Income Maintenance v. Heckler*, 471 U.S. 524, 532, 105 S.Ct. 2210, 2214–15, 85 L.Ed.2d 577 (1985). Because HHS's interpretation of the Statutes is reasonable, and because the Circular does not conflict with the language of the Statutes, the Circular does not contravene federal law.

## C. Was the Application of OMB Circular A–87 Arbitrary and Capricious?

### 1. *Standard of Review*

HHS's disallowance of the interest costs at issue in this case is reviewable under the arbitrary and capricious standard found in 5 U.S.C. § 706(2)(A). Under this standard, the scope of the court's review is quite narrow. The court must determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983). Most importantly, the court is not entitled to substitute its judgment for the judgment of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). The DAB's interpretation of the Circular is entitled to great deference. *Perales*, 894 F.2d at 24.

### 2. *HHS's Application of the Circular was Not Arbitrary and Capricious*

At the outset, it should be noted that the provision of the Circular applied in this case could not more clearly prohibit federal reimbursement for interest costs—interest costs are explicitly listed as "Unallowable Costs." OMB Circular A–87, Att. B., § D.7. Considering that an agency's interpretation of its own regulations is of controlling weight and entitled to great deference, the State faces more than an uphill battle in proving that HHS's interpretation of this clear regulatory prohibition is arbitrary and capricious.

The State first argues that § D.7 itself provides an exception that allows for payment of the interest costs at issue here, because that section states that interest costs are allowable "when authorized by Federal legislation." OMB Circular A–87, Att. B. § D.7. The State bases this point entirely on its earlier argument that federal law mandates payment of interest costs. As noted above, the Statutes do not address the issue of interest, and HHS's exclusion of interest

---

**8.** The State argues that *its* interest costs for this particular transaction were necessary (which, of course, is a matter left to HHS's discretion), and therefore that a general disallowance of interest costs is unreasonable. This argument suggests that, when it adopted the Circular in 1973, HHS was required to make projections and individualized determinations with respect to every type of interest cost that could arise in the future before it could reasonably adopt the Circular. This position is untenable. HHS must promulgate regulations that apply to many different agencies, in several contexts. General application is an essential attribute of regulations.

**9.** The State also argues that the Social Security Act mandates that federal public assistance programs be administered in the most cost-effective manner possible, *see* 42 U.S.C. §§ 421(a)(2), 1382e(b)(2), 1383(g)(4)(B), and that because COPS was the most cost-effective manner of purchasing computer equipment, the Circular violates federal law in failing to reimburse the state for the interest costs associated with COPS. However, the State misquotes these statutory provisions, which require that the programs be administered in the most "effective" manner, not the most "cost-effective" manner. Regardless, using COPS was still the most cost-effective method for the State to acquire computers, and saved the State over $35 million even without reimbursement for the interest costs.

The State further contends that because OMB revised the Circular in 1995 to allow for interest costs, the revision should be applied retroactively to the interest costs at issue here. This argument is frivolous. The revised Circular expressly provides for a prospective effective date on or after September 1, 1995. 60 Fed.Reg. 26484, 26490,-26499 (May 17, 1995). The State argues that the new policy demonstrates that the old policy was unreasonable. Federal law says otherwise. An agency "must consider varying interpretations and the wisdom of its policy on a continuing basis," *Chevron*, 467 U.S. at 863–64, 104 S.Ct. at 2791–92, and must be allowed to adapt its rules and policies to the demands of changing circumstances. *Rust v. Sullivan*, 500 U.S. 173, 187, 111 S.Ct. 1759, 1769, 114 L.Ed.2d 233 (1991).

as an allowable cost was not unreasonable. *See* Part III.B, *supra.* Because federal law does not mandate payment of interest costs, the exception in § D.7 does not apply here. That HHS did not apply this exception cannot be arbitrary, and in fact was entirely reasonable.

The State offers several additional explanations for why HHS's application of the Circular is arbitrary and capricious. First, the State argues that application of the Circular is arbitrary because Federal Acquisition Regulations ("FAR") permit federal agencies to pay some interest costs to commercial contractors. Although the FAR has a similar provision prohibiting payment of interest costs, these costs are permitted under an exception that applies to commercial contractors. *See* 48 C.F.R. § 31.205–20 (interest prohibition) and 48 C.F.R. § 31.205–10 (exception)

Facially, the FAR provisions cited by the State apply only to commercial contractors. No parallel exception existed in the Circular until it was revised in 1995, long after the period for which the interest costs at issue here were disallowed. In addition, the FAR identifies the Circular as the source for cost principles applying to contracts with state governments. 48 C.F.R. § 31.602. When considering this argument, the DAB concluded, correctly, that the federal government may reasonably have different policies and provisions when it seeks to do business with a commercial enterprise, or a not-for-profit contractor, than when it deals with a state or local government. *See* DAB No. 1360 at 7, AR 21.[10] Such policy determinations fall within the discretion of the Secretary as granted by Congress and are not arbitrary and capricious.[11]

The State next argues that the Circular either does not or should not apply to states and should only apply to commercial contrac-

tors. The State supports this theory by pointing out that commercial contractors, unlike the State, are entitled to make a profit. The State then argues that commercial contractors can offset any resulting losses from unreimbursed interest with that profit, which the State is unable to do. The State then concludes that the Circular cannot or should not apply to the State, and should only apply to commercial contractors, because of this distinction. *See* OMB Circular A–87, Att. A, § A.1.

 It goes without saying that the Circular applies to state and local grantees— that much is crystal clear from the title of the document. The State bases its conclusion that the Circular should not apply to the states on its prior argument that HHS improperly adopted the Circular into its regulations, *i.e.* without following notice and comment procedures. This Court (and the DAB) has concluded that HHS's adoption of the Circular was proper, and need not address that issue again here. *See* Part III.B.2, *supra.* Most importantly, it bears noting that by contending the Secretary *should have* modified the Circular to allow for reimbursement of states' interest costs, the State baldly steps into the shoes of the Secretary and substitutes its judgment for hers. Second-guessing an agency that Congress has deputized to enforce a statute is impermissible. *See Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823–24.

Finally, the State argues that HHS's application of the Circular is internally inconsistent because it allows for reimbursement of interest when included in rent charges but not in a lease purchase arrangement. The government responds that this distinction is rational because there is no breakdown of interest in a rental situation, whereas a lease purchase arrangement is essentially an installment contract rather than a lease, a por-

---

10. The DAB relied on the reasoning of DAB No. 1360 in upholding the disallowances at issue here. *See* DAB No. 1417, DAB No. 1537.

11. In this same vein, the State argues that the analogous language of the FAR provisions and the Circular should be interpreted similarly. *See United States v. Hopkins,* 53 F.3d 533, 541 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct.

773, 133 L.Ed.2d 725 (1996). This argument ignores the respective contexts of the two regulations. As noted above, the Circular does not include the exception to the interest provision that is found in 48 C.F.R. § 31.205–10. In addition, *Hopkins* applies to the multiple use of terms that appear within the same *statute,* not separate regulations.

tion of each payment being interest. The government also notes that generally accepted accounting principles treat lease purchase arrangements as installment purchases and require recognition of the interest component of each payment. *See* Letter of Edward Mazur, Controller of OMB, to Representative Frank Horton, dated Dec. 23, 1991, AR 788–89. Lease purchase arrangements therefore are not rental arrangements, and HHS's distinction between them for reimbursement purposes is not arbitrary and capricious, but rather within HHS's discretion.

## IV. CONCLUSION

The State has failed to demonstrate that OMB Circular A–87 was improperly issued by OMB or adopted inappropriately by HHS. The State has also failed to show that the Statutes require the federal government to reimburse the State for the interest costs disallowed by HHS. Nor has the State met its heavy burden of proving that HHS's application of the Circular was arbitrary and capricious. Instead, the opposite is true: no material facts contradict the Defendants' position that the Circular was properly issued and adopted, that the Circular is consistent with federal law, and that HHS's application of the Circular was not arbitrary and capricious. The State's motion for summary judgment on its appeals of DAB No. 1417 and DAB No. 1537 is therefore denied. The Defendants' cross-motion for summary judgment on these appeals is granted. A conference is scheduled for March 5, 1997 at 4:30 p.m.

SO ORDERED: